## INGHAM et al. v. WEED et al.

### L. A. No. 211; March 31,. 1897.

#### 48 Pac. 318.

**Mortgage—Payment of Portion as Discharge.**—Where One Who is Obligated, as between himself and a mortgagor, to pay a portion only of the mortgage debt, pays such portion, and afterward pays the balance due, the payment does not extinguish the mortgage as to such balance.

**Mortgage Foreclosure.**—The Assignee of a Mortgage, by an Assignment absolute on its face, may maintain an action to foreclose in his own name, though, by a collateral agreement, he may be bound to account for the proceeds to another.

**Mortgage Foreclosure—Parties.**—One Who has Transferred All His Interest in mortgaged property is not a necessary party to an action to foreclose.

APPEAL from Superior Court, Los Angeles County; Lucien Shaw, Judge.

Action by E. A. Ingham and R. D. List, trustee, against J. Irving Weed, James P. McCarthy, Edward McCarthy, the McCarthy Company, L. A. Thompson, W. E. Witter and G. P. Lyman, for the foreclosure of a mortgage. Judgment for plaintiffs, from which, and from an order denying a motion for new trial, defendants Weed, the McCarthys, and the McCarthy Company appeal. Affirmed.

H. H. Appel and McKeeby for appellants; Wicks & Wicks & Macdonald and H. T. Gordon for respondents.

BELCHER, C.—The plaintiffs brought this action to foreclose a mortgage, given to secure payment of two promis-

sory notes of which they were the assignees. They obtained a judgment and decree of foreclosure as prayed for, from which, and from an order denying their motion for a new trial, the defendants Weed, the McCarthys and the McCarthy Company, a corporation, appeal.

It appears from the record that prior to March 1, 1888, Edward McCarthy purchased the mortgaged premises from Charles E. Pittman and others. He paid part of the purchase money down, and gave to the sellers a mortgage for the balance. On March 1, 1888, this mortgage had been reduced, by payments made thereon from time to time, to $15,000, bearing interest at the rate of ten per cent per annum. Prior to that time Edward McCarthy had made contracts with various parties, and, among others, with respondents Thompson, Witter and Lyman, to sell to them undivided interests in the said lands for prices agreed upon, to be paid in installments. On March 1, 1888, a written agreement was entered into between Edward McCarthy, as party of the first part, the respondents Thompson, Witter and Lyman and all the other contractors for undivided interests, as parties of the second part, and J. Irving Weed, as party of the third part. The agreement provided that the party of the first part should convey the whole tract to the party of the third part, in trust, to make sales and conveyances and to distribute the proceeds thereof according to the agreement. It conferred upon the trustee full power "to grant, bargain, sell and convey all or any portion of said land for such price and upon such terms as he shall deem best." And, as to his duties, it contained the following provisions: "It is further agreed that the trustee aforesaid shall receive and collect all moneys for sales of the land aforesaid, and pay all taxes, commissions, expenses of sale of all kinds, and improvements, authorized by the parties of the second part, and shall, on or before the first day of July, A. D. 1888, declare a dividend in favor of the second parties of any and all moneys in his hands, in proportion to the interests of the respective parties therein, as shown by the contracts with Edward McCarthy, aforesaid, and shall, out of said dividends, pay to Edward McCarthy the amounts due or to become due to him from second parties on said contracts; . . . . and said trustee shall declare dividends and apply the proceeds in the same manner every

three months thereafter, until all the installments on said contracts have been paid, and all of said property shall have been disposed of. It is further understood and agreed that whereas there is now a mortgage on said property to the amount of $15,000, with interest at ten per cent from March 1, 1888, of which Edward McCarthy has assumed the payment, that, in case it becomes necessary or expedient to change or renew said mortgage, the trustee shall, and he is hereby authorized to, execute such mortgage in his own name, and the amount received by said trustee from said second parties, or in their behalf, applicable to the installments due to Edward McCarthy, shall be applied to the liquidation of said mortgage, and shall be credited on the contracts of Edward McCarthy to second parties in the proportions to which they are respectively entitled thereto.'' Contemporaneously with the execution of this agreement, Edward McCarthy conveyed the land to Weed by a deed absolute on its face, the trust being expressed only in said agreement. Subsequently, the original mortgagees, the Pittmans, demanded payment of a part of the debt and the execution of a new mortgage to secure the balance. Charles McCarthy thereupon paid $5,000 on their $15,000 mortgage, thus reducing the indebtedness to $10,000; and for that balance, on March 27, 1889, James P. McCarthy and Edward McCarthy executed to the Pittmans the two notes in suit, each for $5,000, one payable one and the other two years after date, and the said McCarthys and the said Weed executed the mortgage in suit to secure payment of said notes. Weed never sold any part of said tract of land, as contemplated by the trust agreement; but on November 1, 1892, it being then deemed expedient by all the parties to terminate the trust, he conveyed to each of the beneficiaries an undivided interest in the property, equal to his share or interest therein, as follows: To Edward McCarthy, twenty-five fortieths; to L. A. Thompson, three-fortieths; to W. E. Witter, two-fortieths; to G. P. Lyman, two-fortieths; to Otto Freeman, two-fortieths; and to Andrew Glassell, six-fortieths. Subsequently the said interests of McCarthy, Freeman and Glassell were conveyed by them to the McCarthy Company, defendant, thus vesting in it title to thirty-three fortieths of the whole property. While the notes were held by the payees thereof, the Pittmans, payments of interest and princi-

pal, aggregating $7,495.86, were made and indorsed upon them from time to time. Afterward the balance due on the notes was paid, mostly by the respondents Thompson and Witter, but in part by the plaintiffs; and thereupon, at the request of said respondents, the notes were assigned by the payees to the plaintiffs.

In support of their appeal, appellants contend that the plaintiffs cannot maintain this action to foreclose the mortgage for several reasons: First, because Thompson and Witter were bound by contract to pay off the mortgage, and did so, and it was then extinguished; second, because the plaintiffs have no interest, legal or equitable, in the notes and mortgage, but are acting simply as the agents of Thompson and Witter; third, because the deeds of the trustee to the several parties who had contracts for interests in the land were to be delivered only upon certain conditions, which were never complied with, and hence they were delivered without authority of the grantor, and passed no title to the grantees; fourth, because the only remedy of Thompson, Witter and Lyman was to file a bill for contribution against their associates in the transaction; fifth, because Charles McCarthy was a necessary party to the suit.

1. There is no evidence in the record showing, or tending to show, that Thompson and Witter ever personally undertook to pay the mortgage debt. They did not execute the notes or mortgage, and the only obligation resting upon them in this regard is that evidenced by the agreement of March 1st, to the effect that Weed, as trustee, might execute the mortgage, and might receive the amounts due from the parties of the second part on their contracts with Edward McCarthy, and should apply the same to the liquidation of the said mortgage. This at most created an obligation on the part of each of the parties of the second part to pay his proportion of the debt. But the evidence shows that Thompson, Witter and Lyman each paid his proportion of the debt, and then paid or caused to be paid the balance thereof. This did not extinguish the mortgage as to such balance, but left it a subsisting lien to secure its payment.

2. The evidence shows that each of the plaintiffs paid or obligated himself to pay a part of the money used to take up the notes from the Pittmans. But assuming it were otherwise, and that Thompson, Witter and Lyman paid to the

Pittmans the full amount due on the notes, and then had them assigned to the plaintiffs as their agents for collection, still the plaintiffs were not thereby deprived of the right to sue upon the notes and mortgage in their own names. The assignment vested in them the entire legal title, and they became the real parties in interest. Speaking upon this subject, Mr. Pomeroy, in his work on Code Remedies, (third edition, section 132), says: "It is now settled by a great preponderance of authority, although there is some conflict, that if the assignment, whether written or verbal, of anything in action, is absolute in its terms, so that, by virtue thereof, the entire apparent legal title vests in the assignee, any contemporaneous collateral agreement by virtue of which he is to receive a part only of the proceeds, 'and is to account to the assignor or other person for the residue, or even is to thus account for the whole proceeds, or by virtue of which the absolute transfer is made conditional upon the fact of recovery, or by which his title is in any other similar manner partial or conditional,' does not render him any the less the real party in interest. He is entitled to sue in his own name, whatever collateral arrangements have been made between him and the assignor respecting the proceeds. The debtor is completely protected by the assignment, and cannot be exposed to a second action brought by any of the parties, either the assignor or other, to whom the assignee is bound to account. This is the settled doctrine in most of the states"—citing authorities. And see, also, to the same effect, McPherson v. Weston, 64 Cal. 275, 30 Pac. 842; Grant v. Heverin, 77 Cal. 263, 18 Pac. 647, and 19 Pac. 493; Toby v. Railroad Co., 98 Cal. 490, 33 Pac. 550.

3. That the deeds were executed by Weed with the consent of all the beneficiaries sufficiently appears from the evidence, and it also appears that they were in fact delivered to the grantees, and by them placed on record. And, so far as appears, no objection to the validity of any one of them, for want of delivery or other reason, was ever raised by any party until after the commencement of this action. Under the circumstances shown, it must therefore, in our opinion, be held that the delivery was sufficient to pass title to the grantees. See Witter v. McCarthy Co. (Cal.), 43 Pac. 969, Thompson v. McCarthy Co., 43 Cal. 971, and Lyman v. McCarthy Co., 43 Cal. 971 et seq., where the validity

of three of the said deeds was called in question, and upheld. But assuming that the deeds were not properly delivered, and that no title to undivided interests in the property was passed by them to the grantees, then the title to the whole property still remained in the grantor as trustee. No objection to the validity of the notes and mortgage is raised, and, under these circumstances, this action can and should be sustained as one brought against the holder of the legal title to the property and the several parties having beneficial interests therein under contracts of purchase.

4. If this action could not be maintained, then, clearly, the only remedy of Thompson, Witter and Lyman would be an action for contribution; but, as we have seen that the action can be maintained, it is enough to say that they should not be relegated to another action, but may rest on their rights in this one.

5. Was Charles McCarthy a necessary party to the suit? The law is well settled that only those persons are necessary parties to a foreclosure suit who have some beneficial interest in the mortgaged property or in the demand secured. It is true that McCarthy paid off $5,000 of the $15,000 mortgage, and some interest and expenses that had accrued; but subsequently he transferred all his interest in the property to others, and, at the time this action was commenced, that interest was, and still is, vested in the McCarthy Company. He had consequently no interest in or lien or claim upon the property or demand secured, and was therefore, in our opinion, not a necessary or proper party to the action.

The other points discussed by counsel do not require special notice. The judgment and order appealed from should be affirmed.

We concur: Searls, C.; Britt, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.