### THOMAS BRUSEGAARD v. ANDREAS UELAND.

May 19, 1898.

Nos. 10,967—(75).

**Bank—Receiving Deposit when Insolvent—Knowledge of Insolvency not Proved.**

On the petition and answer, *held*, the petitioner has not established the fact that, when the insolvent bank received the deposit from him, its officers knew it was insolvent.

**Same—Title to Checks Deposited—Agreement to Charge Back if not Paid.**

Petitioner kept an account in the bank, and it received his deposit, consisting of checks, under an agreement that they should be credited to that account, and, if not paid on presentation, they should be charged back against his account. *Held*, the title to the checks passed to the bank, subject to the condition, intended for its protection, that, if the checks were not paid on presentation, it could rescind the act of giving credit, and its title would thereupon be devested.

**Same—Failure of Bank before Collection—Title not Devested.**
> *Held,* further, the failure of the bank after it had received the checks, and before the same were collected, did not devest its title.

Appeal by petitioner from an order of the district court for Hennepin county, Russell, J., denying a petition for an order directing defendant receiver to pay to petitioner the sum of $1,192.36. Affirmed.

*John H. Robertson,* for appellant.

In support of his contention that by the terms of the agreement the title to the checks did not pass, counsel cited: Branch v. U. S. Nat. Bank, 50 Neb. 470; In re State Bank, 56 Minn. 119; McLeod v. Evans, 66 Wis. 401; In re Johnson, 103 Mich. 109; Third Nat. Bank v. Stillwater Gas Co., 36 Minn. 75.

*A. Ueland,* for respondent.

CANTY, J.

At 12:30 p. m., December 29, 1896, the Washington Bank of Minneapolis suspended payment, and closed its doors. It was taken possession of by the state bank examiner that same afternoon, and on the next day a receiver in insolvency was appointed for it by the court. At and prior to these times the petitioner, Brusegaard, was doing business as a banker at Brandon, Minnesota, and kept an account in the Washington Bank, which was his correspondent. He filed a petition in the insolvency proceedings, in which he states that he had for some time prior to December 29 remitted to said bank,

"For collection and credit, the drafts and checks of other banks, received by him from his customers and others; * * * that during all said time it was understood and agreed between your petitioner and said bank that his remittances of checks, drafts, and other items should be credited to the account of your petitioner in said bank, and that, if any such check or draft remitted by him for collection and credit to said bank should not be paid upon presentation, that the same should be charged back against his said account; and that all remittances of checks and drafts (other than currency or specie) should be credited to him upon receipt thereof, only conditionally upon being paid."

These allegations of the petitioner are not denied by the answer.

On December 26 he remitted to the bank, pursuant to this agreement, three checks, drawn by others, for the aggregate amount of $1,324.84. The bank received the checks on the morning of December 28, and on that day sent these checks, together with others, amounting in all to $2,380.35, to the Scandinavian-American Bank of St. Paul, for collection and deposit to the credit of the Washington Bank. All of the checks sent by petitioner were collected on that day, and some of the others. The account of the Scandinavian-American Bank with the Washington Bank then stood as follows:

| | | |
|---|---|---|
| Balance to the credit of Washington Bank prior to the remittance of that day | $ 609 | 51 |
| Checks and drafts of others collected that day | 962 | 84 |
| Proceeds of appellant's checks | 1,324 | 84 |
| Total | $2,897 | 19 |
| Checks and drafts of the Washington Bank paid by the Scandinavian-American Bank | 560 | 75 |
| Balance | $2,336 | 44 |

This balance was paid by the Scandinavian-American Bank to the receiver after he had qualified. The facts above recited are not disputed. The petitioner asks that the court declare a trust in his favor on such balance for the amount of the proceeds of said checks which he had so remitted; and that the receiver be ordered to pay him said amount out of said balance. From the order denying his petition he appeals.

The matter was submitted to the court for decision on the petition and answer thereto. While such a matter may be tried summarily, it is a final trial, on the merits, of a substantial right. The parties are entitled to have it heard on competent evidence, and have the right of cross-examination, but they may also waive these rights. The petition alleges

"That at said time of receiving the said three checks, said Washington Bank was insolvent, as was well known to its officers and agents, but was unknown to your petitioner."

The answer denies that

"Any officer of the Washington Bank knew that said bank was insolvent prior to 12:30 o'clock p. m. on the 29th day of December, 1896, which was the time when said bank suspended payment and closed its doors," and alleges "that up to that time said bank met and discharged all demands upon it, and that it was not, prior to that time, insolvent, except in so far as the property owned by the Bank at that time may be insufficient to pay the debts and liabilities of said bank."

This amounts to an admission that on the morning of December 28 the bank was in fact insolvent, in the sense that it had not sufficient assets to pay its debts, but the answer denies that the officers of the bank knew this fact prior to the time the bank closed its doors. Then the petitioner has failed to establish fraud in the receiving of the checks. Of course, if the bank received his checks, knowing that it was insolvent, it would be guilty of fraud, no title to the checks would pass, and he could recover their proceeds, if he could sufficiently trace such proceeds into the hands of the receiver.

Appellant contends, however, that, by the terms of the agreement under which the checks were sent to the bank, the title to the checks did not pass to it; that it only acquired title to the proceeds of the checks after they were collected.

It appears from the part of the petition first above quoted that the checks "should be credited to the account" of the petitioner, and, if not "paid upon presentation, that the same should be charged back against his said account." This condition did not, as appellant contends, prevent the title to the checks from vesting in the bank. The condition was for the benefit of the bank, not for the benefit of appellant; and the title to the checks vested in the bank at the time it received them, subject to the condition that, if they were not paid on presentation, they should be charged back against his account, and the title of the bank would thereupon be devested. This condition never became operative, and therefore the title acquired by the bank on receipt of the checks has never been devested, even if it appears, as appellant contends, that the bank closed its doors before the checks were actually collected. If the title to the checks once vested in the bank, the closing of its doors would not, in the absence of fraud, devest that title.

This disposes of the case, and the order appealed from is affirmed.