# CASES

### DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

#### AT THE

## OCTOBER TERM, 1914

---

5555. FIRST NATIONAL BANK OF FAYETTEVILLE, TENNESSEE, *v.* McMILLAN BROTHERS.

1. The rule that the title to money placed in a bank on general deposit passes immediately to the bank, and the relation of debtor and creditor is thereby created between the bank and the depositor, and the credit of the banker is substituted for the money, applies also to checks or drafts, where they are received on deposit to be treated as cash, and this is the intention of both parties.

2. If the intention is that the bank shall not be responsible for drafts or checks deposited, except as an agent for collection, title to the paper will remain in the depositor throughout.

3. Ordinarily, when checks or drafts are deposited in a bank, the presumption is that they are deposited for collection merely, and not as cash; but where a check or draft is drawn in favor of a bank holding it or with which it is deposited, the contrary presumption is authorized.

4. A credit made in anticipation of collection will be deemed to be merely provisional, and the bank may cancel the credit or charge back the paper to the customer's account, if it is not paid; but if it appears that the parties intended that the title to the paper should pass, the mere fact that it was understood that the bank would have the right to charge the amount of the paper back to the depositor in case it should prove to be uncollectible will not change the relation of debtor and creditor.

5. Where vendors of goods delivered the goods to a common carrier for shipment to their own order, with direction to notify the purchasers, and a draft upon the purchasers for the price of the goods, payable to a bank, was drawn by the shippers and, with the bill of lading attached, was deposited by them to their credit in the bank, and the deposit was subject to their check and they drew checks against it which were paid by the bank, title to the goods and to the proceeds of the draft vested in the bank.

DECIDED OCTOBER 20, 1914.

Certiorari; from Cobb superior court—Judge Patterson.	January 17, 1914.

An attachment for $29.85 was sued out by McMillan Brothers against L. C. Strong & Son, in a justice's court, and was levied by serving process of garnishment on the Bank of Acworth, the holder of a fund amounting to $352.40, which was claimed by the First National Bank of Fayetteville, Tennessee. Judgment was rendered in favor of the plaintiffs, and, on appeal to a jury in the justice's court, a verdict was rendered in favor of the plaintiffs and against the claimant, and the fund in question was adjudged to be subject to the attachment. The claimant sued out certiorari, and on the hearing the judge of the superior court rendered judgment against the claimant. To this judgment the claimant excepted.

The evidence for the plaintiffs showed that on April 1, 1913, they purchased from the defendants, L. C. Strong & Son, who resided without the State of Georgia, a car-load of ear-corn, and that in the car received there was a shortage of 2,985 pounds, for which the defendants were indebted to the plaintiffs in the sum of $29.85; that the plaintiffs paid Strong & Son for the full car of corn; that later another car of corn was shipped by Strong & Son to the plaintiffs, consigned to the order of the shipper, with order to notify the plaintiffs, and a draft for $352.40, its price, was drawn on the plaintiffs by Strong & Son, payable to the order of the First National Bank of Fayetteville, Tennessee, and the draft, with the bill of lading attached, was deposited with the bank by Strong & Son, to their credit; and that the plaintiffs accepted the draft and paid it to the Bank of Acworth, to which it had been forwarded by the First National Bank for collection, received from the Bank of Acworth the draft with the bill of lading attached, and received the corn from the railroad company; and thereupon sued out this attachment.

The testimony of the cashier of the First National Bank of Fayetteville, Tennessee, in behalf of the claimant, showed that Strong & Son were regular customers of that bank, and that the claimant owned the draft in question; that it paid Strong & Son $352.40 for the draft and the bill of lading attached thereto; that the witness, as its cashier sent the draft, with the bill of lading attached, to the Bank of Acworth for collection, and looked to the Bank of Acworth for the payment of the draft; and that no one but the

claimant owned any interest in the draft at the time it was forwarded for collection or afterwards; that Strong & Son were customers of the claimant, and it habitually received drafts from them, together with checks and cash, which it placed to their credit, less the usual costs on drafts; that it did not receive drafts for collection, but received them as cash, and placed the proceeds to the credit of Strong & Son; that when the bank received a draft for collection for any customer, the draft was not placed to the credit of the customer, but was simply entered upon the collection book of the bank, and the customer's account was only credited therewith when returns were received; that the draft with the bill of lading attached was purchased from Strong & Son in the usual way of handling their business, the draft coming to the bank through the mail, together with other drafts, and nothing was said in reference to the transaction—the business coming in the usual way; that in the event the bank should fail to collect the draft on McMillan Brothers the amount of the draft would be finally charged up to Strong & Son on the books of the bank; that any draft received from Strong & Son and for any reason returned unpaid would be charged against them; that the car-load of corn "belonged with" the bill of lading attached to the draft, the draft being the property of the bank; that the bank did not purchase produce from Strong & Son, but purchased drafts to which bills of lading were attached, and when the produce was shipped to the shipper's order, it was the custom of the bank to have the drafts indorsed by the shipper; that Strong & Son would pay all costs of the suit.

Statements of the account of Strong & Son with the First National Bank of Fayetteville, Tennessee, during the months of March and April, 1913, showing items deposited and amounts checked out by Strong & Son, were verified by the cashier and introduced in evidence. These statements of account showed deposits made from day to day from March 1, 1913, up to and including May 8, 1913, and amounts drawn by Strong & Son by check, from day to day, during the same period. The deposits aggregated $10,329.74, and the checks $8,869.44, thus leaving a balance on May 8, 1913, of $1,460.30 in favor of Strong & Son. An itemized list of drafts, etc., deposited with the First National Bank by Strong & Son during this period, shows that the draft in question was deposited to the credit of Strong & Son. The plaintiffs introduced testimony

21

of the cashier of the Bank of Acworth and of the cashier of the S. Lemon Bank, as to the custom of banks in giving customers credit for drafts left with them for collection, to the effect that if such drafts were not paid, it was customary to charge them against the customer's account.

*Joe Abbott,* for plaintiff in error. *J. J. Northcutt,* contra.

WADE, J. (After stating the foregoing facts.) 1. "When money is placed in a bank on general deposit, the title to the money immediately passes to the bank, and the relation of debtor and creditor is created between the bank and the depositor. The moment the deposit is made, the credit of the banker is substituted for the money." *McGregor* v. *Battle,* 128 *Ga.* 577 (58 S. E. 28, 13 L. R. A. (N. S.) 185). The same rule applies to checks or drafts deposited by a customer, if when deposited they are regarded by both parties as equivalent to so much cash. The transaction amounts to a purchase of the check or draft by the bank, and the bank becomes responsible to the depositor for the amount thereof. It must appear, however, that the check or draft was received as a deposit to be treated as cash, and that this was the intention of both parties.

2. If the check or draft is deposited for collection, then it is clear that the bank does not take title, but merely undertakes to act as agent for collection; the title to the check or draft remains in the depositor, and the relation between the parties is that of principal and agent, and not of debtor and creditor. *Fourth National Bank* v. *Mayer,* 89 *Ga.* 108 (14 S. E. 891) ; *Freeman* v. *Exchange Bank,* 87 *Ga.* 45 (13 S. E. 160) ; *Bailie* v. *Augusta Savings Bank,* 95 *Ga.* 277 (21 S. E. 717, 51 Am. St. R. 74). Morris *v.* Eufaula Nat. Bank, 122 Ala. 580 (25 So. 499, 82 Am. St. Rep. 95). If the parties intend to treat such paper as cash, title passes at once upon receipt of the deposit by the banker, but if the intention is that the bank shall not be responsible except a* an agent for collection, title remains in the depositor throughout The difficulty in determining the relation between the partie* lies in the determination of their mutual intention, and this must of necessity depend upon the individual facts of each case; so that the question is one rather of fact than of law. Balbach *v.* Frelinghuysen, 15 Fed. 675; City of Somerville *v.* Beal, 49 Fed. 790.

3. Ordinarily, when checks or drafts are deposited in a bank,

the presumption is that they are deposited for collection merely, and not as cash; but where a check or draft is drawn in favor of a bank holding it, or with which it is deposited, the contrary presumption is authorized. Gettysburg National Bank v. Kuhns, 62 Pa. St. 88. It appears to be well settled that merely crediting a depositor with the amount of a check, whether this be done in his pass-book or upon the books of the bank, is by no means conclusive evidence that the paper was received as cash or otherwise than for collection. A credit so made in anticipation of collection will be deemed merely provisional, and the bank may cancel the credit or charge back the paper to the customer's account, if it is not paid by the maker or drawer. National Gold Bank v. McDonald, 51 Cal. 64 (21 Am. R. 697); In re State Bank, 56 Minn., 119 (57 N. W. 336, 45 Am. St. R. 454), and numerous other authorities. Upon the other hand, if the parties intend that title to the paper shall pass (from whatever evidence or circumstances this may appear), the mere fact that it is agreed or understood that the bank will have the right to charge the amount of the paper back to the depositor in case it prove to be uncollectible will not change the relation of debtor and creditor. Brusegaard v. Ueland, 72 Minn., 283 (75 N. W. 228); Ayers v. Farmers etc. Bank, 79 Mo. 421 (49 Am. R. 235). It has been held in some cases that the fact that one had the privilege of drawing against a check deposited in bank by him, even before it was collected, was inconsistent with any transaction which did not vest in the bank the title to the paper. That fact is undoubtedly strong evidence of the mutual intention that the bank should become wholly responsible for the check or draft, though it has been held in some jurisdictions that the contrary may still be shown by evidence or implied from other facts.

It seems to be well settled that a bank takes title to the proceeds of a check or draft deposited with it for collection, immediately upon crediting the depositor with the amount of the proceeds. The bank occupies the position of an agent for collection until the proceeds are actually received and credited, whereupon it takes title thereto, and the relation of creditor and debtor results instead of that of principal and agent. By the weight of authorities this appears to be true because it is a universal custom of bankers so to credit the proceeds of a paper deposited for collection, and because, in the absence of an agreement to the contrary, the parties would be presumed to have contracted with a view to this custom.

5. It has been held by our Supreme Court that where a common carrier receives goods consigned to the order of the shipper, with direction to notify a designated person at the place of delivery, and issues to the consignor a bill of lading, which the consignor attaches to a draft for the price of the goods, drawn by him on the person to be notified, and he delivers the draft and the bill of lading, indorsed in blank, to his bank, to be placed to his credit on his general account, and the amount of the deposit is actually credited to the general account after consignor and depositor, who has the right to check against the deposit and does in fact actually draw against it, the bank acquires title to the goods represented by the bill of lading, and its title can be asserted against the lien of a subsequent attachment creditor of the consignor. *Alexander* v. *First National Bank,* 140 *Ga.* 266 (78 S. E. 1071); *National Bank of Webb City* v. *Everett,* 136 *Ga.* 372 (71 S. E. 660); *Fourth National Bank* v. *Mayer,* 89 *Ga.* 108 (14 S. E. 891). It will be noted that in each of these cases cited, the fact that the depositor had the right, under the agreement between himself and the bank, to check against a deposit of this character and did in fact draw or check against the deposit, and that the check or draft was honored by the bank, appears largely to determine the relation between the depositor and the bank, and thereby determine the title to the check or to the proceeds arising therefrom.

It will be observed that in the testimony in behalf of the claimant in the present case it is not in so many words stated that Strong & Son had the right to check against the draft deposited to their credit in the First National Bank, but the cashier of that bank testified absolutely and unequivocally that the title to the draft passed to the bank at the time of the deposit; that the bank purchased the draft with the bill of lading attached thereto, and ever since owned and still owned both the draft and the bill of lading. Also, the accounts introduced in evidence showed that numerous drafts, including this draft, were deposited by Strong & Son with the First National Bank during the months of March and April, 1913, and that throughout the same period they drew checks against their general account with this bank, aggregating a large amount and apparently drawn against the various drafts deposited, so that the bank's accounts appear to supply definitely evidence that the draft in question was not only deposited to the general credit of Strong & Son, but was checked against by them. As said above,

even without affirmative proof, there is a presumption that a draft deposited with a bank is deposited for collection, but where the draft is drawn in favor of the bank itself, the presumption is that it was deposited absolutely with the bank and that title thereto passed to the bank. The fact that the bank cashier testified that the amount of the draft, if not collected, would be charged back to Strong & Son would not itself change the relation between the parties.

The plaintiff's recovery appears to have been based on proof of certain circumstances which tended in some degree to show the relation between the First National Bank and Strong & Son to be that of principal and agent, rather than that of creditor and debtor; but these circumstances, slight at best, must yield to absolute and undisputed testimony of the cashier of 'the First National Bank (to say nothing of the presumption created by the fact that the draft was drawn in favor of the bank) that this bank was the actual owner of the draft with the bill of lading attached thereto, and hence of the proceeds arising therefrom; especially since the bank's accounts which were introduced supply evidence that the draft was subject to check and was actually checked against by Strong & Son; thus bringing the case precisely under the decisions in *Fourth National Bank* v. *Mayer, National Bank of Webb City* v. *Everett,* and *Alexander* v. *First National Bank,* supra. See also *Elberton Grocery Co.* v. *First Nat. Bank, 3 Ga. App.* 413 (59 S. E. 1129); *Akers* v. *Jefferson County Savings Bank, 120 Ga.* 1066 (48 S. E. 424). Undoubtedly, therefore, the title to the draft passed to the First National Bank at the time it was deposited with that bank to the credit of Strong & Son on their general account, and hence the funds in the Bank of Acworth, arising from the draft, were not subject to garnishment, and the judge of the superior court consequently erred in overruling the certiorari.

It is unnecessary to discuss the question whether a nonsuit should have been awarded, as other evidence was introduced after the refusal to grant a nonsuit, and the case was finally determined on the entire evidence, which is all under consideration in this case.

*Judgment reversed. Roan, J., absent.*