JOHN R. WEED *vs.* BOSTON & MAINE RAILROAD.

Aroostook.    Opinion April 25, 1925.

*An action against a terminal railroad for misdelivery of a carload of potatoes shipped by a person in his own name, where an "on arrival" draft with bill of lading indorsed in blank attached for the invoiced value of the potatoes, drawn by the shipper to the order of his bank on the expected buyer and deposited by the drawer in the bank to his credit, not for collection, was dishonored by the drawee and charged back by the bank to the drawer and the papers returned by the bank to the drawer by manual delivery only, thus retransferring the title to the potatoes to and reinvesting it in the drawer, will not lie under the statute in this State unless the assignment of the chose in action for the misdelivery of the potatoes is in writing.*

*Where the assignment is not in writing the action is maintainable only in the name of the assignor.*

In the instant case the drawer-shipper sued the terminal railroad, in his own name without reference to the assignment, for misdelivery of the potatoes, counting on facts which, accepting the proof thereof, in the attitude of the parties, as sufficient of conversion, show the conversion to have been while the transaction at the bank still stood but to the credit of the depositor in his account, and the bank had title to the property that the bill of lading described and of which it was universally symbolic.

Passing back the papers by the bank to its customer operated to retransfer the title to the potatoes from the bank and to reinvest it in the drawer of the draft. It operated too as an assignment of the chose in action for the misdelivery of the potatoes, but under the law as the Legislature has made it, the assignment of the chose being without writing, action thereon in the name of the assignee will not lie.

On report.  An action of trover to recover the value of a carload of potatoes.  On June 20, 1916, the plaintiff shipped a carload of potatoes from Monticello in his own name to Nashua, New Hampshire, Holbrook, Marshall Co., being the prospective buyer.  On June 21, he drew a draft on Holbrook, Marshall Co. for the price of the potatoes payable to the Farmers National Bank, indorsed in blank the bill of lading, and delivered the draft with the bill of lading attached to the bank.  The bank credited the plaintiff's account with the amount of the draft less charges.  On June 26 the plaintiff learning that the car had not been accepted went to

Nashua and found the car on the siding at the warehouse of Holbrook, Marshall Co., with the doors open and some of the potatoes removed. On July 12, the draft, having been dishonored by the drawee, was charged back to the plaintiff by the bank, and the draft and bill of lading returned to him by the bank. At the conclusion of the evidence, by agreement of the parties, the cause was reported to the Law Court. Plaintiff nonsuit.

The case fully appears in the opinion.

*Charles P. Barnes and Nathaniel Tompkins,* for plaintiff.

*Cook, Hutchinson & Pierce,* for defendant.

SITTING: CORNISH, C. J., PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

DUNN, J. On report. Trover against the terminal road for the misdelivery of merchandise. The case antedates both the Negotiable Instruments and the Uniform Bills of Lading Acts.

The action must fail. At the time of the asserted taking and conversion, the plaintiff was without property and possession in the personalty, having conveyed the same to his bank. These are the facts of the story:

An Aroostook county dealer consigned from his home station to himself at Nashua, New Hampshire, on June 20, 1916, one carload of potatoes, under direction that his prospective purchaser, the concern of Holbrook, Marshall & Company, be notified when the consignment was arrived.

Next, the shipper drew his "on arrival" draft on the Holbrook company, payable to the order of the bank in which the drawer was of the regular customers, for the amount of $970.47, the invoiced value of the potatoes. The bill of lading which the initial carrier had issued was indorsed by the plaintiff, in blank, and attached to his draft. Then the draft, with the bill attached, was deposited to the credit of the plaintiff at the bank. The deposit was not treated as a collection item, but as unconditionally as if the credit of $968.00 extended therefor, were cash. The credit was available at once to the depositor's check.

Eventually the freight was at Nashua, whither plaintiff went on being informed that the "notify consignee" had refused the shipment. Plaintiff found the car on the siding at the warehouse of the aforesaid

Holbrook, Marshall & Company, where the common carrier had set it. The seals were broken, the doors of the car open, and some of the potatoes missing. Who took or what was done with the missing or the rest of the potatoes is not directly in the record.

Sixteen days afterward the bank charged back the draft to its depositor, such practice being customary on dishonor by a drawee, as the drawer-depositor all along knew. From time to time during the interval between the crediting and the debiting of the draft, the depositor checked against his bank account, but the balance in his favor was never less than the amount of the deposit, though he was at liberty to have withdrawn all. Claim for damages was made within the time limitation of the bill of lading, that is, within four months of the relied-on delivery of the property, and little less than six years from that delivery the instant action was begun.

If the proof be accepted as sufficient of conversion, and the defendant argues on the premise that wrongful dominion was exercised by it over the property, though it does not concede and the court is not deciding the rather narrow question of fact, then there are defensive aspects of the case which stand forth in bold relief, whereof but a single one need occupy attention.

Trover is a possessory action wherein the plaintiff must show that he has either a general or special property in the thing converted and the right to its possession at the time of the alleged conversion. *Jones* v. *Cobb*, 84 Maine, 153; *Weeks* v. *Hackett*, 104 Maine, 264; *Gilpatrick* v. *Chamberlain*, 121 Maine, 561; 26 R. C. L., 1131; 38 Cyc. 2044. This statement is more or less elemental. It is but generalization. And generalizations do not get anywhere. The strength of any proposition lies in its application.

When the bill of lading was indorsed and delivered to the bank, the title to the property that the bill described and of which it was universally symbolic, passed to the transferee quite as completely as it could have been passed by deed and delivery of the potatoes themselves. *Winslow* v. *Norton*, 29 Maine, 419; *Robinson* v. *Stuart*, 68 Maine, 61. Of course, in any case of this kind, the real character of the transaction shall govern. And the chief criterion for determining the substantive nature is the true intention of the parties. Of controlling consequence, however, is how the dealing was and not how it might have been. In the absence of evidence manifesting an intention to the contrary, as the situation is here, the effect of the

indorsement and delivery of the bill was that of making the bank the rightful owner of the potatoes. *Weyand* v. *Atchison, T. & S. F. R. Co.*, (Iowa), 39 N. W. 899, 1 L. R. A., 650.

And when, at the same time, and without distinguishing the matter from the usual and ordinary one with any depositor, the bank took for deposit the obligation of the draft and the depositor had the right, once the credit entry was carried to his account, to draw the whole, or any part thereof, without awaiting payment of the draft, the doing was consistent with and indicative of a sale and purchase, in which as with money so deposited, the draft became the property of the bank, as a holder for value in due course. The bank could have sold the draft, or might have lost it, or neglected collection, or otherwise done with it as it chose, without violating any right of the depositor, under its absolute contract with him to pay his checks to the extent of the credit. Had the draft been wrongfully converted the bank could have maintained an action for the value; or it might have replevied it; had the draft been stolen the theft would have been of the property of the bank; if the bank had refused payment of the depositor's check it would have been liable; it would have been chargeable in trustee process had the fund been attached, and had the affairs of the bank become involved the negotiation would not have been rescindable.

No dissent from the general doctrine that the passing of title to negotiable paper upon a transfer thereof to a bank by which upon deposit it is credited to the depositor's account, or is to be credited when the proceeds are collected, rests fundamentally in intent, is intended. But the design and meaning of the parties must, in some measure, in every case as to the true purpose of the business, be determined on the circumstances. The theory is that the accustomed relation between a bank and its customer, where there is no definite understanding as to the ownership of paper whereof the depositor has credit with the right to check, is that of debtor and creditor rather than of principal and agent, or trustee and beneficiary under a trust. And hence, the physical thing becomes the property of the bank, impressed with no trust, and which it may dispose of at its pleasure, bound only to pay an equivalent sum to the depositor upon his demand or order. Thus was it that Massachusetts reasoned and concluded. *Taft* v. *Quinsigamond Nat. Bank*, 172 Mass., 362. And New York so decided, *Craigie* v. *Hadley*, 99 N. Y., 131; Illinois,

·*American Trust & Savings Bank* v. *Gueder & P. Mfg. Co.*, 37 N. E., 227; California, *Gonyer* v. *Williams*, 143 Pac., 736; Kansas, *Scott* v. *McIntyre Co.*, 144 Pac., 1002; Maryland, *Auto & Accessories Co.* v. ·*Merchants Bank*, 81 Atl., 294; Vermont, *Walker* v. *Randlett Co.*, 89 Vt., 71, 93 Atl., 1054; Washington, *Nat. Bank* v. *Hines*, 192 Pac., 899; Wisconsin, *Aebi* v. *Bank of Evansville*, 102 N. W., 329. And adjudications elsewhere second decision, too.

Legal saliency is patent in the Virginia case of *Fourth Nat. Bank* v. *Bragg*, of report in 102 S. E., 649, and informingly annotated in 11 A. L. R., 1034. It was there held, to borrow the phraseology of the annotator's headnote, that a bank which credits the amount of a draft to a depositor, and permits him immediately to draw against it, becomes the owner of it and the bill of lading which is attached to it, although it reserves the right to charge back the amount in case the draft is not paid. *Walsh, Boyle & Company* v. *First Nat. Bank*, (Ill.), 81 N. E., 1067, is authority for the statement that the indorse-·· ment and delivery by a shipper of a bill of lading to a shipment of flour, with sight draft attached, to a bank, who credited the shipper's account with the amount of the draft, operated as a symbolical delivery of the flour, and vested the title in the bank.

The threads of fact given ascendancy in the majority-rule cases are not all the same, nor are the decisions the result of one method of reasoning. Some of the cases stress the right to draw upon the account. *Ditch* v. *Western Nat. Bank*, 29 Atl., 72, 23 L. R. A., 164; *Security Bank* v. *Northwestern Fuel Co.*, (Minn.), 59 N. W., 987. In the Ditch Case much relevancy is in the observation, to para- phrase slightly the opinion, if the bank had paid to the depositor the full amount of the check in coin or currency, there would have been no question about the nature and effect of the transaction. But the bank gave the depositor what was preferred to the coin or currency. It gave the depositor the unconditional right to get the coin or currency at any time he might see fit to call or send for it.

Other cases emphasize that the depositor checked on the credit. *Walker* v. *Randlett Co.*, supra; *Williams* v. *Cox*, (Tenn.), 37 S. W., 282; *Sanders* v. *Worthen Co.*, (Ark.), 182 S. W., 549. Again, the exhaus- tion of the account weighs essentially. *Scott* v. *McIntyre Co.*, supra.

That the bank is payee of the paper is accented in some cases. *Auto & Accessories Co.* v. *Nat. Bank*, supra; *First Nat. Bank* v.

*McMillan,* (Ga.), 83 S. E., 149. And no point is made thereof in other cases. *Walker* v. *Randlett Co.,* supra; *Howe Grain etc. Co.* v. *Crouch Grain Co.* (Texas), 211 S. W., 946. And still other cases, as noticed at the outset, stand upon and apply the principle that title passes to the bank, where the transaction is the everyday one of deposit, credit, and the right immediately to withdraw—of transfer and sale and of purchase, and the other and valuable consideration of the right to check instanter. *Burton* v. *United States,* 196 U. S., 283, 49 Law Ed., 482.

Usages of business obtaining in a locality may color a particular procedure. Perhaps, in the case now under consideration, consistent with a habit pertaining to Aroostook, it was purposed that the bank be in the class of a vendee of property bought conditionally, the proviso going to the honoring of the draft, and the credit being in mere convenience. If once the transaction was that, it would so continue, the condition remaining unfulfilled. But, pressed to the strongest, this is not in the record.

That the contingency of charging back was contemplated does not vary the general rule. The bank had this right irrespective of the customer's expectation, or of custom. The contract of the drawer of a bill of exchange is to pay if the one drawn on refuses. *Nat. Bank* v. *Gooding,* 87 Maine, 337. The dishonor of the seasonably presented draft permitted the bank, upon due notice, or the excusing of it, to charge its depositor as a drawer, as a matter of law. That such right had recognition does not go to the title to the draft. *Burton* v. *United States,* supra; *Ditch* v. *Western Nat. Bank,* supra; *Fourth Nat. Bank* v. *Bragg,* supra; *Heinrich* v. *First Natl. Bank,* 219 N. Y., 1. The bank merely employed this method to reimburse itself for the credit which it had given.

On charging back the credit, the fair inference reassured by the arguments is, that the draft and the accompanying bill of lading were retransferred by the bank to its customer, by simple manual tradition or delivery.

A bill of lading is a contract, in every sense of the term, and the assignment of the special bill, in the nature of things, carried with it all rights incident thereto. Of these was the cause of action for the conversion of the potatoes. That cause was capable of being assigned. *Rogers* v. *Portland & B. St. R. Co.,* 100 Maine, 86; *Metropolitan Ins. Co.* v. *Day,* 119 Maine, 380. And, without further remark, that cause was then and thereby assigned.

But in what manner to be enforced? A bill of lading is non-negotiable. Likewise is the chose in action which the plaintiff has sued as of his original right in his own name. The suit is without parent or even relation in the common law. In that law the assignee of a chose in action is required to sue in the name of his assignor. In the statute book is the law which permits an assignee to name himself as plaintiff, but with his writ must be the assignment, or a copy thereof. R. S., Chap. 87, Sec. 152. The permission vouchsafed is coupled with positive command. True enough, if one sue as assignee and do not file the assignment or copy, the failure must be availed timely, else it will be regarded as waived. But this case is not that. The genesis of the plaintiff's right is the assignment of the cause of action. 'Twas the bank's; 'tis his. Plaintiff sued without reference to the assignment, in his own name, on a cause set out as primeval in himself.

Notwithstanding the statute, an assignee if he chooses may still sue in his assignor's name, and suing in such a manner, need not supply the assignment. *Rogers* v. *Brown*, 103 Maine, 478; *Hall* v. *Hall*, 112 Maine, 234. But to maintain an action in his own name, save as he may be excused by a defendant, an assignee must come within and follow the statute. *Harvey* v. *Roberts*, 123 Maine, 174. Thus is the law as the Legislature has made it.

The declaration in the writ in this action sets out one thing; the proof is of another.

Let the entry be,

*Plaintiff nonsuit.*

CORNISH, C. J. sat at argument and participated in consultation, but, owing to retirement, does not join in the opinion.