## MIDLAND NATIONAL BANK & TRUST COMPANY OF MINNEAPOLIS v. FIRST STATE BANK OF SIOUX FALLS AND OTHERS.[1]

November 30, 1928.

No. 26,678.

**Defendant's pledge of collateral to plaintiff was a Minnesota contract and not ultra vires.**

1. A contract of pledge of collateral securities to secure any indebtedness or obligation owing by defendant bank to the plaintiff bank made and to be performed in Minnesota is a Minnesota contract and is not ultra vires though forbidden by a statute of South Dakota.

**Plaintiff could apply proceeds of collateral upon collections unpaid by defendant.**

2. The plaintiff received checks and drafts from its customers and credited their accounts with the understanding that they should not draw against them until they were paid, and if not paid that the plain-

[1]Reported in 222 N. W. 274.

tiff bank might charge against the credits given. The plaintiff sent them to the defendant bank for collection. The defendant collected them and sent a draft therefor to the plaintiff drawn upon the plaintiff. It had no funds with the plaintiff and immediately suspended. The drafts were dishonored. The bank charged against its depositors the uncollected items. *Held* that it was entitled to foreclose the collateral under the pledge contract and apply on the amounts collected by the defendant and not paid.

Banks and Banking, 7 C. J. § 452 p. 716 n. 47.

Defendants appealed from an order of the district court for Hennepin county, Dickinson, J. denying their motion for a new trial. Affirmed.

*O'Malley & O'Malley* and *T. B. Thorson,* for appellants.
*Ueland & Ueland,* for respondent.

DIBELL, J.

Action by the plaintiff to foreclose collateral deposited with it by the defendant First State Bank of Sioux Falls, South Dakota, as security for obligations which it owed or might owe. There were findings for the plaintiff, and defendants appeal from the order denying their motion for a new trial.

The defendant First State Bank is organized under the laws of South Dakota. The defendant Smith is superintendent of banks of that state, and the defendant Ward is the examiner in charge of the defendant bank which became insolvent and suspended on October 27, 1925.

The plaintiff was the correspondent bank in Minneapolis of the First State Bank. It did a considerable amount of business with it, loaned it money, and rediscounted its paper. The First State Bank deposited with it collateral to secure such obligations as existed or might arise. The pledge agreement was dated May 25, 1925, and in part provided as follows:

"Know All Men By These Presents, That the undersigned [First State Bank of Sioux Falls] in consideration of financial accommodations given or to be given or continued to the undersigned by the

Midland National Bank of Minneapolis, Minnesota, hereby agree with the said Bank that whenever the undersigned shall become or remain directly or contingently indebted to the said Bank for money lent or for money paid for the use or account of the undersigned or for any overdraft or upon any endorsement, draft, guarantee or in any other manner whatsoever or upon any other claim, the said Bank shall then and thereafter have the following rights, in addition to those credited by the circumstances from which such indebtedness may arise, against the undersigned, or his or their executors, administrators or assigns, namely:

"1. All securities deposited by the undersigned with said Bank, as collateral to any such loan or indebtedness of the undersigned to said Bank, shall also be held by said Bank as security for any other liability of the undersigned to said Bank, whether then existing or thereafter contracted; and said bank shall also have a lien upon any balance of the deposit account of the undersigned with said Bank existing from time to time, and upon all property of the undersigned of every description left with said Bank for safekeeping or otherwise, or coming to the hands of said Bank in any way as security for any liability of the undersigned to said Bank now existing or hereafter contracted."

On October 22, 1925, October 23, 1925, and October 24, 1925, the plaintiff forwarded to the defendant bank for collection and remittance checks and drafts drawn on various banks in Sioux Falls, totaling $19,843.59, which it had received from various customers. All of them were collected by the Sioux Falls bank except one item of $3. The defendant bank, through its drafts in payment upon the plaintiff and in its favor, covered the amount collected, $19,840.59. The Sioux Falls bank failed on October 27, 1925, before the drafts reached the plaintiff. It had no funds with the plaintiff, payment was refused, and the drafts were dishonored.

Checks were deposited with the plaintiff bank with the understanding that they would be credited to the various accounts of their customers, but that they should not have the right to withdraw them until paid and, if not collected, that the plaintiff might

charge them against the depositors. When the drafts on the South Dakota bank were dishonored the plaintiff charged against its customers the amounts of the checks and drafts which they had deposited, except one item of a few hundred dollars which a depositor had been permitted to withdraw.

The plaintiff collected and applied part of the collateral and now asks for a foreclosure and sale of that remaining. It is the contention of the defendants:

(1) That the pledge agreement was ultra vires and void.

(2) That if not void, the plaintiff, having charged against its various customers the amounts which it had credited them as it had the right by contract to do, cannot recover of the defendant bank and therefore cannot foreclose the collateral.

1. The statute of South Dakota reads:

"No bank shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security;  *  *  * provided further, that any bank may borrow money for temporary purposes, and may pledge as collateral security therefor the assets of such bank in an amount not to exceed fifty per cent in excess of the paid-up capital and surplus of said bank." Rev. Code 1919, § 8984, as amended by Laws S. D. 1925, p. 79, c. 92.

The contract of pledge was not in a proper sense an ultra vires contract. It was a forbidden one. The statute was enacted in furtherance of what was deemed better banking. It prohibited and made criminal the act against which it was directed. If it were a South Dakota contract it would be invalid there. This is the effect of Smith v. Continental State Bank (D. C.) 11 F. (2d) 907, where Judge Sanborn held that a pledge contract made in South Dakota securing a Minnesota bank whose representative came to South Dakota and made his contract of pledge was invalid. The contract before us was made in Minnesota and was to be performed in Minnesota and is a Minnesota contract. The situation presented is not at all like that before us in Farmers & M. State Bank v. Consolidated School Dist. No. 3, 174 Minn. 286, 219 N. W. 163. There the bank's assets were pledged to secure deposits.

2. The contention that the plaintiff, having charged back the credits against its customers, cannot apply the collateral in discharge of the obligation arising from the default of the Sioux Falls bank, is without merit.

Immediately upon the failure of the Sioux Falls bank to pay, the plaintiff had a cause of action against it for the amount which it had collected and did not pay. It had the legal title, so to speak, to the dishonored drafts drawn by the Sioux Falls bank. Whatever right it had arose upon the failure of the bank to remit what it received, and its right was protected by the security of the pledge agreement. There is no reason why the Sioux Falls bank or its creditors should have the $19,000 which came from its collections for the plaintiff when the pledge agreement secured its payment to the plaintiff, and the plaintiff be compelled to seek a remedy by participating in the insolvent estate of the bank. It was right that the collateral held under the pledge agreement should respond to the payment of the moneys collected. The charging off of the credits was a matter between the plaintiff bank and its customers. Neither the South Dakota bank nor its creditors nor those representing them in this action should gain by it. There is being kept from the South Dakota bank only the amount by which its assets were enhanced through the collections made immediately prior to its suspension. We have examined all the cases cited. Brusegaard v. Ueland, 72 Minn. 283, 75 N. W. 228, and In re State Bank, 56 Minn. 119, 57 N. W. 336, 45 A. S. R. 454, are much relied upon. We find in them nothing controlling in favor of the defendants; nor do we in Eifel v. Veigel, 169 Minn. 281, 211 N. W. 332. Whatever the rights between the depositors and the plaintiff may be, or would be if the plaintiff had not charged back the credits, the right of the plaintiff to foreclose the collateral and apply on the unpaid collections is clear.

Order affirmed.

HOLT, J. took no part.