WESTERN CREAMERY CO. v. MALIA et al.

No. 5609.   Decided May 15, 1936.   (57 P. [2d] 743.)

*Lewis Jones,* of Brigham, for appellants.

*Thatcher & Young* and *Paul Thatcher,* all of Ogden, for respondent.

ELIAS HANSEN, Chief Justice.

Plaintiff brought this action to establish a preferred claim for the sum of $154 to be paid out of the assets of the Tremonton Banking Company, an insolvent banking corporation. The trial court found that plaintiff was entitled to the relief prayed and entered judgment accordingly. From that judgment, defendants appeal. Plaintiff has cross-appealed and seeks a review of an order made on defendants' motion to retax costs, in which order the witness fees of one Monson, a plaintiff's witness, is disallowed. Mr. Monson, at the time he testified, was the treasurer of plaintiff. It was because of such fact that his witness fees and mileage were disallowed. The facts—about which there seems to be little, if any dispute—are these: On July 2, 1932, and prior thereto, the defendant bank was engaged in the banking business at Tremonton, Box Elder county, Utah. In April of 1932 plaintiff opened a checking account with defendant bank. Various deposits were made by plaintiff with the defendant bank and checks were drawn thereon by the

plaintiff. On July 1, 1932, the check involved in this controversy was drawn by plaintiff on the Security National Bank of Salt Lake City, Utah. The check was made payable to the plaintiff C/o Tremonton Banking Company, Tremonton, Utah. It was indorsed by plaintiff "for deposit only to the account of Western Creamery Company." After being so executed and indorsed, the check was sent by mail to the defendant bank. It was received by the defendant bank on July 2, 1932, and by it credited to the account of plaintiff. A certificate of deposit was made out and a copy thereof mailed to plaintiff. Such certificate of deposit contained these provisions:

"Right is reserved and the bank is authorized to forward items for collection or payment, direct to the drawee or payor bank, or through any other bank at its discretion, and to receive payment in drafts drawn by the drawee or other banks, and except for negligence, this bank shall not be liable for dishonor of the drafts so received in payment nor for losses thereon."

Upon being so credited to the account of plaintiff, the check was indorsed by the defendant bank, "Pay to the order of any bank, banker or trust Co. all prior indorsements guaranteed." The check was then mailed to the Security National Bank where it was received on July 5th and credited to the account of the defendant bank. July 3, 1932, was Sunday, and July 4th was a holiday which accounts for the fact that the check was not received by the Salt Lake bank until July 5th. Since July 5, 1932, the defendant bank has been in the hands of the state banking department for the purpose of winding up its affairs. So far as appears, no agreement was had between plaintiff and defendant bank whereby plaintiff was authorized to draw against any check deposited by plaintiff prior to the time that such check was honored and paid by the drawee bank. It does appear that on one occasion the defendant bank paid one of plaintiff's checks drawn upon it, notwithstanding the payment of such check would have constituted an overdraft except for credit given by the defendant bank for a check deposited by plain-

tiff which had not yet been paid by the drawee thereof. No checks were drawn against, and no money was paid on, the check involved in this litigation. It was stipulated by the parties at the trial that it was the custom of the defendant bank when checks deposited with it were not paid by the drawee to charge such unpaid checks to the account of, and return the same to the depositor. It is further made to appear that the defendant bank was on July 5, 1932, indebted to the drawee in a substantial sum; that some time subsequent to July 5, 1932, the drawee bank applied the check in question, together with other credits in favor of the defendant bank, upon the obligation which the defendant bank owed to the drawee bank. There was considerable evidence in the record, which is brought here for review, touching the financial condition of the defendant bank on July 2, 1932. The trial court found that on July 2, 1932, the defendant bank was insolvent and known to be such by its officers, but that such bank was not hopelessly and irretrievably insolvent. Considerable is said in the briefs of counsel concerning the court's finding in such respect, but as will presently appear it is not necessary to discuss that phase of the case on this appeal. There is no dispute about the fact that the defendant bank was insolvent on the morning of July 5, 1932, and was unable to open for business on that date. One of the principal questions upon which the parties divide is: Did the defendant bank acquire title to the check in question when it was deposited to the credit of plaintiff? R. S. Utah 1933, 61-1-37, provides that:

"An indorsement is restrictive which either: * * *

"(2) Constitutes the indorsee the agent of the indorser; or,

"(3) Vests the title in the indorsee in trust for, or to the use of, some other person.

"But the mere absence of words implying power to negotiate does not make an indorsement restrictive."

We quote from a number of authorities as to the legal effect of depositing a check at a bank and receiving a credit therefor:

"When the depositor has indorsed his paper restrictively, thereby showing his intention to retain his ownership, the first bank is an agent to collect, possessed no title thereto, and is incapable of transferring a title by any kind of indorsement or agreement to any other; and every successive bank to which the paper may be sent is in like manner an agent to collect and to remit the proceeds to the first. The depositor can, therefore, recall his paper before collection or demand and can recover the proceeds wherever they may be and the insolvency of any agent or subagent possessing his paper or the proceeds does not affect his right to recover the same.

"As a general rule indorsements * * * 'for deposit to the credit of,' or 'for deposit to the account of,' preserve the depositor's rights to the paper and the proceeds, which cannot be impaired by any subsequent indorsements inconsistent with his own." 7 C. J. 600.

"The mere crediting of paper restrictively indorsed to the depositor as cash does not of itself transfer the title to the bank. But it is held by numerous authorities that the title does pass, if the depositor has a right to draw at once for the amount credited, as though it were a cash deposit." 7 C. J. 602.

"While the deposit of paper in the bank by a customer, he indorsing it 'for deposit,' may operate to clothe the bank with the title under certain circumstances, yet, generally, it would seem that where paper is indorsed for deposit to the credit of the indorser and deposited with that bank for collection, the indorser retains the ownership not only of such paper, but of its proceeds until they are collected and passed to his credit by the bank." 6 Michie on Banks and Banking, p. 25, notes 26 and 27.

"But the relation of debtor and creditor is established between a bank and a depositor therein of a check, where such check is delivered up to and accepted by the bank as cash, and treated as such, and so charged up to the bank to which it was sent for collection. In such case the depositor can not follow the check or its proceeds where the bank becomes insolvent." 3 Michie on Banks and Banking, p 248.

"An indorsement 'for my use,' or 'for collection'—not being an actual transfer of the amount—may be recalled at pleasure." 2 Daniel on Negotiable Instruments (7th Ed.) p. 810, § 782.

"The insolvency of a bank at once terminates its authority to proceed further, and if collections are afterward made, or those previously undertaken are completed, the proceeds are held in trust for the owners." 7 C. J. 625.

The doctrine announced in the foregoing texts finds support in numerous adjudicated cases, many of which are cited in the footnotes to the texts. We shall not, in this opinion,

undertake a review of those cases. They are reviewed in *Fourth Nat. Bank* v. *Bragg*, 127 Va. 47, 102 S. E. 649, 11 A. L. R. 1043 et seq.; 16 A. L. R. 1084; *Weed* v. *Boston & M. R. R.*, 124 Me. 336, 128 A. 696, 42 A. L. R. 492; *Bromfield* v. *Cochran*, 86 Colo. 486, 283 P. 45, 68 A. L. R. 725. When the deposit slip contains a provision to the effect that the bank in which the check is deposited acts merely as the agent for collection, and not as purchaser thereof, such fact is uniformly regarded as very material, if not conclusive, evidence of the intention of the parties as to the passing of title. 11 A. L. R. 1070; 42 A. L. R. 502; 68 A. L. R. 735. In the instant case the check was received by the defendant bank which was authorized to forward it for collection or payment, and to receive payment in a draft drawn by the drawee or other bank, and, except for negligence, the defendant bank was not liable for the dishonor of the draft so received in payment, nor for losses thereon. The foregoing provision clearly indicates that the defendant bank regarded itself, not as the owner of the check, but as the mere agent for the collection of the money notwithstanding plaintiff was given credit therefor. Plaintiff did not draw against the check nor receive any payment thereon. There was no agreement to the effect that plaintiff had any such a right. The mere fact that on one occasion plaintiff did draw against a check deposited to its account at the defendant bank before the check had been collected from the drawee bank does not require a finding that plaintiff on the occasion in question had such a right. The finding of the court below to the effect that the title to the check in question did not pass to the defendant bank when it was there deposited should not be disturbed.

It is next urged on behalf of defendants that the fact that the drawee bank credited the defendant bank with the check in controversy precludes plaintiff from prevailing as a preferred creditor. The case of *Jennings* v. *United States F. & G. Co.*, 294 U. S. 216, 55 S. Ct. 394, 79 L. Ed. 869, 99 A. L. R. 1248, is cited by defendants in support of that contention. In that case the bank forward-

ing the check for collection and the collecting bank were both solvent when the check was collected. It was held that:

"In the absence of tokens of a contrary intention, the better common-law doctrine is that the agency of a collecting bank is brought to an end by the collection of the paper, the bank being from then on in the position of a debtor, with liberty, like debtors generally, to use the proceeds as its own."

The quotation is from the syllabus of that case which reflects the law announced in the opinion. In the instant case the defendant bank was insolvent and closed when the check reached the collecting bank. In such case, as will be seen from the texts and cases collected in 7 C. J. 625, heretofore quoted in this opinion, the authority of the defendant bank terminated before the check was presented to the drawee bank. The case of *Jennings* v. *United States F. & G. Co.,* supra does not aid the defendants.

It is next urged that the proceeds of the check did not come into the possession of the defendant bank, and hence it may not be held liable therefor. It does appear that some time after the drawee bank learned of the failure of the defendant bank the former applied the proceeds of the check upon the obligation owing to it by the latter. So far as appears, the defendant bank has acquiesced in that transaction and retains the credit so given to it by the drawee bank. It may not upon this record be said that defendant bank has not received the proceeds of the check when it has received and accepted credit for the same. It is also contended by appellants that the court below was in error in directing that plaintiff's claim has priority over all other claims against the defendant bank. It may be that there are other claims against the defendant bank of equal or superior rank with the claim here brought in question. However, there is nothing in this record which so indicates. For the reasons stated, plaintiff's claim is entitled to priority over the claims of common creditors. If there are insufficient funds to pay in full all preferred

claims, plaintiff is merely entitled to be paid pro rata with other claims of equal rank. However, no claim was made in the court below that there were insufficient funds to pay all preferred claims against the defendant bank. If for any reason there are insufficient funds to pay all preferred claims against the defendant bank, the defendants should be permitted to amend their pleadings so that such matter may be inquired into.

Plaintiff and cross-appellant has cited a number of authorities in support of its contention that the court below was in error in striking from its cost bill the item of witness and mileage fees for the witness Monson. Defendants have not called our attention to any authority which holds to the contrary. R. S. Utah 1933, 28-5-8, provides:

"* * * No witness shall be obliged to attend court in a civil cause when subpoenaed unless his mileage and fees for one day's attendance are tendered or paid to him on demand, nor unless his fees for attendance for each day are tendered or paid to him on demand. The fees of witnesses paid in civil causes may be taxed as costs against the losing party."

The law applicable to the right of an employee of the successful party to demand witness fees is thus stated in 15 C. J. 126, § 277:

"Although there is some authority to the contrary, the general rule is that costs may be taxed for fees of persons attending as witnesses in a suit in which they are interested, but in which they are not parties. The fact that the witnesses were employees of the successful party who subpoenaed them does not prevent an allowance for their mileage and attendance; and the rule is not affected by the fact that the witnesses were transported by their employer without expense to them."

In 70 C. J. 71 the law is thus stated:

"One who attends court as the agent of a party, necessarily attending to the conduct of the suit, cannot be allowed witness' fees, although he testifies; but compensation will be allowed to an officer, agent, or member of a corporation who attends as a witness in its behalf in a suit to which the corporation is a

party, but in which he has no private interest, unless he is in court necessarily attending to the conduct of the suit."

There is nothing in this record which shows or tends to show that Monson was in court attending to the conduct of the trial.

The same rule applies to officers as well as stockholders of a corporation. In addition to the cases cited in the footnotes to the texts just quoted, the case of *Feenaughty Machinery Co.* v. *Turner,* 44 Idaho, 363, 257 P. 38, is to the same effect. Notwithstanding the witness Monson was the treasurer of plaintiff company, the court below was in error in striking from the cost bill his witness fees and mileage.

This cause is remanded to the district court of Box Elder county, Utah, with directions to permit the defendants to amend their pleadings, if they be so advised, by setting up as an additional defense that the defendant bank has insufficient funds to pay in full preferred claims. Should the defendants not so amend their pleadings, the judgment appealed from is affirmed with directions that there be added thereto the statutory witness fees and mileage of the witness Monson. Respondent is awarded its costs.

FOLLAND, EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.