BOURQUE-LANIGAN POST No. 5
THE AMERICAN LEGION
*vs.*
PETER P. CAREY

Kennebec. Opinion July 14, 1952.

*Perkins, Weeks & Hutchins, Charles N. Nawfel, Foahd J. Saliem,* for plaintiff.

*Jerome G. Daviau,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, JJ. (WILLIAMSON J. did not sit.)

MURCHIE, C. J. The issue raised by the defendant's exceptions herein, whereby he seeks to challenge the acceptance of a referee's report, within the right reserved in the rule of reference, must be resolved, in final analysis, by testing the written objections thereto, filed pursuant to Rule 21 of the Rules of Court, 129 Me. 511. See *Brewster* v. *Churchill,* 148 Me. 8, 88 A. 2d. 585, and cases cited therein.

The objections were five in number, but the allegations of error carried in the Bill of Exceptions relate exclusively to the second of them, the substance of which is stated hereafter. It was the election of the defendant not to attempt the prosecution of exceptions applicable to any of the others, as is made apparent by the fact, noted in his brief, that he is relying:

> "upon the bill of exceptions alone, without the printed record."

At oral argument defendant's counsel stated frankly that all the objections other than the second were waived. To determine the impact of that one the facts must be stated.

These disclose that the plaintiff is an American Legion Post, organized under what is now Chapter 50 of our Re-

vised Statutes (1944), at a time when the property holding of a corporation so organized was limited to $100,000. It was raised to $500,000 by P. L. 1949, Chap. 25. Prior to the change the plaintiff contracted with the defendant for the erection of a building, to serve as a legion home, on a parcel of land it then owned, at a cost of $131,000. Either because of the property limitation fixed by its charter, for convenience, or for both said reasons, and possibly others, the plaintiff caused a business corporation to be organized under the general law, R. S. 1944, Chap. 49, as the plaintiff's records show:

> "to effectuate the purposes of realizing a new home for the post and to carry out all the business details connected therewith."

Among its By-Laws was one declaring the "Intent of Corporation," which recited that "upon request" of the plaintiff, all its assets would be conveyed to the plaintiff "without profit," and that "in the meantime":

> "recognition will be given to the obligation of this corporation to conscientiously exercise its charter powers in the interests and to the future advantage of"

the plaintiff.

After the organization of the corporation, named "The Bourque-Lanigan Post No. 5, The American Legion Building Corporation," referred to hereafter as the "Corporation," and before any work under the contract was commenced, the plaintiff conveyed the land on which the defendant had undertaken to construct the home to the Corporation. The Corporation mortgaged the property to raise funds to meet the contract terms, made all payments under the contract which were made to the defendant, and ultimately ousted him from the premises and brought his contract work to an end. There was no assignment of the contract. There was no novation. The work proceeded without

interruption, so far as the Bill of Exceptions shows, and the award made by the referee shows his finding, which cannot be reviewed in the absence of the record, that the contract was breached by the defendant.

The defendant does not deny the breach, or claim that the damage award was excessive. Instead he relies exclusively on the claim set forth in the second of his written objections, that the plaintiff, having conveyed the legal title to the land on which the building was to be erected to the Corporation, has no standing in law to collect damages for the breach.

We can find no basis for the claim in any of the authorities cited by the defendant, or elsewhere. He cites us to 1 Am. Jur., Actions, Pars. 3, 8, 20, 28, 31 and 62; 47 C. J., Parties, Pars. 32, 36 and 39; 39 Am. Jur., Parties, Pars. 10 and 14; 2 Am. Jur., Agency, Par. 22; 4 Am. Jur., Assignments, Par. 2; 5 C. J., Assignments, Par. 61, Footnote (b) ; *Reed* v. *Nevins,* 38 Me. 193; *Pollard* v. *Somerset Mutual Fire Insurance Co.,* 42 Me. 221; *Morrison* v. *Clark,* 89 Me. 103, 35 A. 1034, 56 Am. St. Rep. 395; and *Weed* v. *Boston & Maine Railroad,* 124 Me. 336, 128 A. 696, 42 A.L.R. 487.

The texts declare definitely that a party must have some interest in a subject matter of potential litigation to entitle him to maintain an action thereon, as is well illustrated by *Reed* v. *Nevins, supra,* where an obligee in a poor debtor's bond sought recovery thereunder unsuccessfully after he had assigned it to a third person, and *Weed* v. *Boston & Maine Railroad, supra,* where trover was denied a plaintiff who had neither the title nor the right of possession to the personal property which was the subject matter of the action. So it must be with any action which is dependent on title to property of any kind. The authorities make it clear also that under appropriate circumstances a right may be assigned without the execution of a formal assignment.

The present case deals with a breach of contract, and specifically with a contract entered into between the parties to the action. The fact that there has been a breach of it, by the defendant, is not denied. The defendant asserts, merely, that the plaintiff has no title to either the land on which the building was to be erected, or the contract under which the work of construction was to be carried on. He asserts, in effect, that the conveyance of the title to the land and the Corporation's oversight of his construction work operated to effect an assignment. In this connection it is interesting to note what Judge Savage said, speaking for a court that was unanimous, in *Coombs* v. *Harford,* 99 Me. 426, 59 A. 529. The plaintiffs therein were attempting to proceed as the assignees of a bond, under an assignment made without consideration, for the express purpose of placing them in position to bring the action. They were members of the lodge to which the bond ran. They were, he said, its "servants and agents," and:

> "such was the relation of the lodge to them and the claim, that * * * it could at any time have revoked and cancelled the assignment."

In *Weed* v. *Boston & Maine Railroad, supra,* it was made plain that intention might control the relationship created by transactions between parties.

There can be no doubt of the intention underlying the transactions here in question between the plaintiff and the Corporation. The latter was vested with the bare legal title to the land on which the building was to be constructed for the purposes of the former, and within the former's control. We know of no reason why it should not collect damages for defendant's breach of contract in its own name, where the contract still stands.

The defendant suggests the possibility of danger that after he pays the plaintiff the damages awarded by the

referee, he may be answerable to the Corporation for the same breach of his contract. That there is no fear of such an eventuality is demonstrated quite effectively by one of the cases cited on his behalf, *Morrison* v. *Clark, supra*. The defense of *res judicata* is available whenever a subject matter, in controversy:

> "was brought directly in question by the issue in the proceedings which terminated in the former judgment."

For other cases dealing with that defense, see *Emery* v. *Fowler*, 39 Me. 326, 63 Am. Dec. 627; *Piper* v. *Daniels*, 126 Me. 458, 139 A. 480; *Libby* v. *Long*, 127 Me. 293, 143 A. 66. There can be no possibility of doubt on the facts of the present case, as presented in the Bill of Exceptions, concerning the relationship between the plaintiff and the Corporation. That relationship would be a complete answer to any process instituted by the Corporation to recover for a breach of defendant's contract with the plaintiff when the defendant pays the judgment which will issue in this case.

*Exceptions overruled.*