FRANK F. COOMBS et als. vs. JAMES H. HARFORD et als.

Cumberland.    Opinion December 27, 1904.

*Bond.  Surety.  Assignment.  Voluntary  Association.  R. S. 1903,*
*c. 84, § § 28, 146.*

1.  Where the by-laws of a lodge provided that the trustees before entering
    upon the duties of their office should give a joint or several bond to the
    lodge with three sureties to be approved by the lodge, the trustees might
    unite in a joint bond, or each trustee might give a several bond.
2.  The acceptance of the bond by the lodge was a sufficient approval of it.
3.  Though the by-laws required three sureties, yet a bond signed by the
    principal and two sureties only, is valid if accepted and approved by the
    lodge, and the two sureties cannot complain, if they signed without con-
    dition, or any understanding that a third surety was to sign.
4.  A bond given to a lodge by one of its officers stands for the security of
    the lodge, whoever may be its members for the time being, and although
    the personnel of its membership may be constantly changing.   Those who
    are members at any given time may enforce it.
5.  The sureties on such a bond are not discharged by a change in the mem-
    bership of the lodge, nor by the fact that increased duties and responsibili-
    ties are imposed upon the officer by increase in membership.
6.  An officer's bond conditioned for the faithful performance by the princi-
    pal of the duties of his office "during his continuance in, and so long as
    he shall hold said office by election, re-election or otherwise," and for his
    delivering up all funds in his possession "at the expiration of his said
    office, or whenever he may cease to hold the same " is a continuing bond,
    and is valid and enforceable according to its terms, though the lodge by-
    law provided for annual elections to the office in question.
7.  Such bond, however, ceases to be in force if there is an interruption in
    the principal's holding the office.                                    ·
8.  It is not necessary to the validity of lodge proceedings that the record
    should show that a quorum was present.   A quorum will be presumed to
    have been present, unless the contrary appears.
9.  Regularity of procedure may properly be presumed as to details of lodge
    elections, if not shown to be otherwise.
10.  The sureties on the several bond of one of the trustees may be holden
    for the personal default of their principal.
11.  An assignment of a chose in action, made without consideration, and
    merely for the purpose of bringing suit for the benefit of the assignor, is

colorable only, and vests no title in the assignee. Such assignee cannot maintain suit thereon in his own name.

12.  Lodges may maintain actions in the names of their trustees for the time being.

13.  The sureties on a several continuing bond given by one of the lodge trustees, when the by-laws provided that the bonds of the trustees should be joint or several, are no longer holden after the lodge has changed its by-laws so as to require the trustees to give a joint and several bond. In giving and accepting the continuing bond, there was a neccessary implication that if the lodge should change the required form of bonds, so that a several bond would no longer be allowable, it would require the trustees next elected to conform to the new requirement.

14.  In this case, the several bond given in 1889 ceased to be operative in 1893, when the lodge by-law was changed so as to require the trustees to give a joint and several bond; and the sureties, therefore, are not liable for a default which occurred in 1901.

On report. Judgment for defendants.

Action of debt on a bond given by the defendants to Elizabeth City Lodge, No. 114, Independent Order of Odd Fellows of Maine, located in South Portland, Cumberland County. In the court below, by consent of the parties, the evidence was reported to the Law Court to render such judgment as the rights of the parties require.

The case is sufficiently stated in the opinion.

*W. R. Anthoine* and *Thomas L. Talbot,* for plaintiffs.

*F. H. Harford, E. E. Heckbert* and *A. F. Moulton,* for defendants.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

SAVAGE, J. Action of debt on bond. In December 1888, the defendant James H. Harford was elected one of the three trustees of Elizabeth City Lodge of the Independent Order of Odd Fellows for one year. The by-laws of the lodge at that time provided that the trustees should be elected annually and should have charge of all the stocks, securities, investments, properties and permanent funds of the lodge, and required that they should previous to entering upon the duties of their office give a joint or several bond to the lodge with three sureties to be approved by the lodge, for the faithful perform-

ance of their duties.    As we construe this requirement, the trustees might unite in a joint bond, or each might give a several bond. Such was the construction placed upon the by-law by the lodge itself, and it seems clearly permissible.    January 1, 1889, James H. Harford, with the other two defendants as sureties, executed the bond in suit, which was his several bond, and which was security for his personal default.    The evidence satisfies us that the bond was delivered to and accepted by the lodge, but there is no evidence of a formal approval of the sureties by the lodge.    The bond was conditioned for the faithful performance by the principal of the duties of his office "during his continuance in, and so long as he shall hold said office by election, re-election, or otherwise," and for his delivery to his successor in office, or to any person appointed by the lodge to receipt them, of all funds, securities and other property in his possession or under his control," at the expiration of his said office, or whenever he may cease to hold the same.    The plaintiff claims that Harford continued in office by re-election or otherwise until the end of the year 1901, but there is no evidence that he gave any other bond.    During the year 1901 he embezzled $578 of the funds of the lodge under his control.    Subsequently by authority of a vote of the lodge, all the right, title and interest of the lodge in the bond was assigned to the plaintiffs, who were at that time, respectively, a member of the finance committee, one of the trustees, and the treasurer of the lodge.    The assignment was without consideration, and was made solely for the purpose of enabling the assignees to bring suit on the bond in their own names for the benefit of the lodge. The reason for this lay in the fact that the lodge was an unincorporated association, of which the defendant Harford, and at least one of the sureties were members, and no action at law on the bond in the names of the members would lie because these defendants would be both plaintiffs and defendants.

1.    Among the minor defenses set up are these.    The defendants object that the bond had only two sureties, instead of three as required by the by-laws, and that there is no evidence of its formal approval by the lodge.    We do not think either of these objections can avail. It does not appear that either of the sureties signed the bond on any

condition, or with any understanding that another surety was to sign. The bond was for the protection of the lodge. It might have required a bond with three sureties, but the fact that it accepted the bond with two sureties shows that it was satisfied with it, and if the lodge was satisfied it does not lie in the mouths of the sureties to complain. So, the acceptance of the bond was a sufficient approval of it.

2. Again, the defendants say that since the bond was given the membership of the lodge has not only changed, but has increased, that the persons composing the lodge to whom the bond was given are not the same persons composing the lodge for whose benefit this suit is brought, and that by the increase of membership increased duties and responsibilities were placed upon the trustees, and that by reason of both these facts, the sureties have been released from liability. As to these objections it is sufficient to say that the very nature of an unincorporated association like a lodge of Odd Fellows pre-supposes a change from time to time, and a hoped for growth, in its membership. All that must have been in contemplation at the time the bond was given. It must have been contemplated that members would die, or otherwise cease to be members, and that new members would be admitted. The bond was given for the security of the lodge, whoever might be its members for the time being, and although the personnel of the membership might be constantly changing. If a member dies, his interest lapses. So, if he goes out of the lodge in any other way. New members coming in thereby obtain the same rights as the original members. The association, protected by the bond, remains a unit and unchanged, and those who are its members at any given time may enforce it.

3. The defendants further object that the bond was security for only one year, because the election in consequence of which it was given was for one year only. The constitution of the lodge requires annual elections. But by the terms of the bond itself, it was to be in force so long as Harford held the office, whether by re-election, or otherwise. Such a continuing bond is valid according to its terms. *Amherst Bank* v. *Root,* 2 Met. 522; *Middlesex Co.* v. *Lawrence,* 1 Allen 339; *Railroad Co.* v. *Elwell,* 8 Allen 371. The obligors remain bound because as was intimated by Chief Justice Shaw in

*Chelmsford Co.* v. *Demarest,* 7 Gray, 1, they had anticipated future elections, and provisionally bound themselves accordingly.

4.   But the defendants contend that, in any event, the bond would be good only until there was an interruption in Harford's holding the office, and such is conceded to be the law.   It is claimed that an interruption must be held to have occurred for the year 1897, because the records fail to show that a quorum was present at the election, and because they do show that Harford did not receive a majority of the votes, for the year 1893, because the records fail to show that there was a balloting, and for the year 1894, because there is no record, or other proof, that Harford was elected for that year.   As to 1897, it was not necessary that the record should show the presence of a quorum.   A quorum will be presumed to have been present, unless the contrary appears.   *Citizens' Mut. Fire Ins. Co.* v. *Short-well,* 8 Allen, 217.   The claim that Harford did not receive a majority of the ballots is based upon a misapprehension.   Three trustees were balloted for, it seems, at once.   The total number of ballots for all was 39.   Harford had 13, Skinner 11, Spear 12, and Willard 3, making the total 39.   Harford, Skinner and Spear were properly declared elected.   As to 1893, the record simply says that Harford and two others were declared elected.   The details of the election are not given.   We think this is sufficient.   Regularity of procedure may properly be presumed.   The doctrine of omnia rite acta presumuntur applies with particular force to the proceedings of such bodies as this.   *Sargent* v. *Webster,* 13 Met. 504.   The same observation applies to the election of 1889, when the secretary was directed to cast the vote of the lodge for Harford, and the record does not show that there were no others in nomination.   As to 1894, the difficulty is more serious.   There is no record presented of any election whatever for that year, and our attention has been called to no law of the society, whereby an officer holds over until his successor is elected and qualified.   But as the failure of proof is probably due to inadvertence, which might be corrected, by discharging the report, we prefer to rest our decision upon other grounds.

5.   Another defense is that the sureties upon the individual bond of the trustee are not liable for a default occurring during a term of a

later and different board of trustees.    It is said that legally speaking the lodge entrusted its funds to a board of trustees, and not to one of them, and further that the funds were intact at the beginning of the year 1901.    It is accordingly argued that the entire board for 1901 are to be held responsible, and not the sureties of any one of them under an earlier bond.    We do not think so.    Notwithstanding the trustees were a board, and were to hold custody of the property as a board, it could not have been contemplated that the physical custody of the bonds and books and other property would always be in all three, at the same time.    Such a thing would be impossible.    Any trustee might for the time being have the sole physical custody of the property—and so any trustee might personally default.    Harford defaulted personally.    His co-trustees may have been negligent in the management of the funds, and so, at fault themselves, but that does not excuse Harford, or relieve the sureties who covenanted for his faithful performance of his duties.

6.    It is insisted that these plaintiffs have no standing in court as assignees, and that therefore this action cannot be maintained.    This objection must be sustained.    The assignment was without consideration.    It was given merely for the purpose of bringing suit for the benefit of the assignor.    It was colorable, and not real.    It was given to certain officers of the lodge.    They are spoken of by one witness as a "committee" and we think that term fairly designated their relation to the lodge.    They were the servants and agents of the lodge.    Except as members of the lodge they had no interest in the claim.    If they could be said to be trustees for the lodge, still the lodge had the entire beneficial interest.    And such was the relation of the lodge to them and to the claim, that we think it could at any time have revoked and cancelled the assignment.    The case is not like that of *Reed* v. *Nevins*, 38 Maine, 193, cited by the plaintiffs, in which the assignment recited a consideration and there was no proof to the contrary.    The court treated it as an assignment for a consideration, and hence not revocable against the will of the assignee.

We are aware that some courts have held that it does not concern the defendant, and hence is immaterial, whether the assignment is

real or colorable, in that he loses no right to make a defense, and·is protected by payment to the assignee.   But the rule has been settled otherwise in this state.   In *Waterman* v. *Merrow,* 94 Maine, 237, an assignment of an account without consideration, and made for the sole purpose of collecting it by suit in the name of the plaintiff, was under consideration.   The court held that "such an assignment must be deemed colorable only and inoperative to transfer to the plaintiff the property in the account and the right to maintain an action on it in his own name."   Upon further consideration we are satisfied with this rule.   It is not a question as to whether a defendant has any interest in the reality of the assignment, but it is a question of statutory construction,— of legislative intent.   At common law of course, the assignee of a chose in action, not negotiable, could not maintain an action in his own name.   He must sue in the name of the assignor.   But by statute in this state, R. S. ch. 84, sect. 146, such assignees may sue in their own names.   We think this statute was intended to give the real owner of a chose in action the right to meet his adversary face to face upon the record, to enable the real party in fact to be such in the action, and in such case to relieve the assignor from any danger of liability for costs.   We think it was not intended to give the real owner a right to sue in the name of someone else.   In the sense in which we use the term here, the real owner need not be the sole beneficial owner.   He may be the owner of part interest only and trustee for the balance, or he may be trustee for the whole.   These considerations affect only the parties to the assignment.   They arise in multitudinous forms in business transactions.   They do not concern the debtor.   But we use the term real owner as contra distinguished from colorable assignee, one who is made assignee solely for the purpose of bringing suit in his own name.   The statute furnished a remedy for a real difficulty, and we do not think we are warranted in extending its provisions to such an assignee or to assignments which are fictitious or merely colorable. Hence we conclude that these plaintiffs cannot prevail, in this suit. The case of *Norris* v. *Hall,* 18 Maine, 332, cited by the plaintiffs is not in point, as in that case the action by an assignee in his own name, was based upon an express promise by the debtor to pay the

assignee, and it was held further that if proof of the consideration of the assignment was necessary, the deed reciting a consideration was sufficient, there being no proof to the contrary. The difficulty, or inconvenience, which this lodge would have had at common law in enforcing this bond by proceedings ·in court has been remedied by another statute, R. S., ch. 84, § 28, by the provisions of which it might have sued in the name of its trustees for the time being. It will be understood of course that indorsees of negotiable paper stand upon a different footing from assignees of other choses in action.

7. The case comes up on report, and as the ultimate question of liability will probably arise hereafter in a suit by the lodge in the name of its trustees, we think it advisable to consider whether the defendants are liable to the lodge upon this bond.

In 1893 the lodge amended its by-laws so as to require the trustees to give a joint and several bond instead of joint or several bonds as the by-laws before that time had provided. After the adoption of the amended by-law it was the duty of Harford and his co-trustees to unite in giving one bond, a joint and several bond. Before that time each trustee might give a several bond, subject to the approval of the lodge. We think that upon the adoption of the amended by-law, it became the duty of the lodge, as to these defendants, whose several bond it then held, to enforce the by-law and to require a new bond of the trustees. These defendants had tendered the old bond. It had been accepted. It had only two sureties, instead of three, but the defendants could not complain of that, and the lodge did not. It was a continuing bond, but there was the necessary implication, we think, that it was to continue in force only so long, in any event, as the lodge by-laws permitted the bonds to be joint or several. It must have been implied that if the lodge should change the required form of bonds, as it did, and should no longer permit each trustee to give a several bond, it would require the trustees next elected to conform to the new requirement. If that be so it seems to follow necessarily that it was also implied that in such case the obligors on the old bond should be no longer holden. Upon that implication, the old bond ceased to be operative after 1893, the year in which the amendment was made.

*Judgment for the defendants.*