STATE ex rel. FREEBOURN, Attorney General, Plain-
tiff, v. MERCHANTS' CREDIT SERVICE, INC., et al.,
Defendants.

(No. 7,527.)

(Submitted January 26, 1937.  Decided February 12, 1937.)

[66 Pac. (2d) 337.]

*Mr. Raymond T. Nagle,* Attorney General; *Mr. H. C. Hall,* Special Assistant Attorney General; *Mr. John W. Bonner,* representing the Montana Bar Association; *Mr. John McKenzie, Mr. L. J. Molumby* and *Mr. C. T. Busha,* for Plaintiff, submitted an

original and a reply brief. *Mr. Bonner* and *Mr. Edward C. Alexander,* of Counsel, argued the cause orally.

80

*Messrs. Toomey, McFarland & Chapman,* for Defendants, submitted a brief; *Mr. John W. Chapman* argued the cause orally.

86

*Mr. George E. Hurd,* representing the Associated Credit Bureaus of Colorado, Wyoming and New Mexico, and appearing as *Amicus Curiae,* submitted a brief.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an original proceeding brought to have the defendants adjudged in contempt of court for practicing law without a license. Many lawyers throughout the state, as well as collecting agencies, have been permitted to appear as *amici curiae*. After issues were framed by the pleadings the court appointed Honorable A. F. Lamey, a practicing attorney of Havre, as referee to take testimony. The testimony was taken at a hearing held in Great Falls and has been certified to this court. The important facts are these:

The Merchants' Credit Service, Inc., is a Montana corporation with its principal office in Great Falls. Its business is that of carrying on a collection business. The defendant Palmer Johnson is its general manager. It solicits, from merchants and others, the assignment of debts for collection. Creditors are advised that the corporation has in its employ attorneys at law who are retained to represent it wherever necessary. It uses letter-heads representing that it can garnishee wages and attach property. Some creditors assign claims by using what is called a "claim sheet" furnished by defendants. This claim sheet is in the following form:

"Merchants' Credit Service, Inc., Great Falls, Montana.

"Gentlemen: The accounts listed on this sheet are hereby assigned to you for collection in accordance with your regular schedule of rates and terms. The undersigned guarantees them to be just, correct and unpaid, and will furnish you with a fully itemized statement of any of these accounts upon request. None of these accounts are at present listed with other collectors or with attorneys. You will be notified promptly of any payments made directly to us by any of these debtors and your regular terms will apply to such payments.

If it is necessary, you are authorized to forward any of these accounts to other collectors or to attorneys, and it is expressly understood that we will not hold you responsible for the efficiency, honesty or defalcation of such forwardee. Should you deem it necessary to file suit on any of these accounts, this assignment makes you the party in interest in whose name suit is to be filed; if an attorney is necessary he is to be selected, engaged and compensated by you, and in all ways the handling and settlement of the suit is left to your choice, judgment and discretion.

"Date: —— 19—.

"Signed ————————
"By ————————"

(On the sheet appear five columns, headed as follows:)
"Name.

"Last Known Address.

"Amount.

"Last Date of Purchase or Service.

"Remarks: Give any information you can regarding debtor's employment, etc., that will help us. If all or any part of the debt is covered by a note or other instrument, that instrument should be enclosed with this sheet. If the account is disputed, letters from the debtor will help. If his address is not known, give us the name and address of relatives, etc."

Other creditors use their own method of assignment, while still others do so orally, but with the understanding that the claim sheet covers the terms and conditions of the verbal assignment.

Defendant corporation pays nothing for the assignments at the time they are made, but, in the event of collection, transmits a certain percentage thereof to the assignor, retaining the balance for its fee for effecting collection. When it receives an account or demand for collection, an agent of the corporation calls upon the debtor at his home, writes him a letter, or telephones to him and endeavors to collect without suit, but often it resorts to the courts for collection. If suit is in the

district court, the corporation appears by duly licensed attorneys retained by it. If suit is in the justice court, the defendant Johnson or some other employee of the corporation prepares the complaint, summons, affidavit for attachment, writ of attachment and execution, and appears for the corporation unless an answer is filed or there is opposition to the suit. When suit is on a promissory note calling for the payment of attorneys' fees in case of suit a demand is made therefor, whether an attorney is employed or not. In most cases the defendant corporation advances the costs of suit, but in some cases, where recovery is doubtful, the assignor advances 50 per cent. thereof. Justice court judgments are in many cases abstracted and filed with the clerk of the district court and execution thereon is issued by the clerk of the district court. When collection is effected by suit or otherwise, the defendant corporation deducts its agreed commission and transmits the balance to the assignor.

The first question for determination is whether this court has jurisdiction to punish for contempt, if the acts complained of constitute unlawful practice of law. This court is by statute given the exclusive power to confer upon any persons the right to practice law (sec. 8936 et seq., Rev. Codes), and to deprive them of that right. (Sec. 8961, Id.) If any person shall engage in the practice of law without being authorized so to do, even though that practice is not done directly in this court, it has the right to punish for contempt. (Compare *In re Bailey,* 50 Mont. 365, 146 Pac. 1101, Ann. Cas. 1917B, 1198; *In re White,* 54 Mont. 476, 171 Pac. 759; *In re Phillips,* 64 Mont. 492, 210 Pac. 89; *State* v. *Barlow,* (Neb.) 268 N. W. 95.)

The question of primary importance in this case is whether the so-called assignments of claims to the defendant corporation are sufficient, so that the corporation may be said to be the real party in interest within the meaning of section 9067 of our Codes. The defendants contend that by reason of these assignments the defendant corporation becomes the real party in interest, and, therefore, when it files suit in its own

name on these claims it is entitled to conduct its own litigation. The contention of the plaintiff is to the contrary, namely, that these assignments are so in form only, and that they are insufficient to make the corporation the real party in interest.

Section 9067, Revised Codes, provides: "Every action must be prosecuted in the name of the real party in interest, except that an executor or administrator, a trustee of an express trust, or a person expressly authorized by statute may sue without joining with him the person for whose benefit the action is prosecuted. A person with whom, or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section."

Ever since the adoption of the original New York Code of 1848, the provisions of the above section have been a fundamental requirement of Code pleading. Prior to the adoption of the Code, if the assignee of a claim sued at law, he was turned out of court; and if the assignor sued in equity, he was turned out also. As a result of the adoption of this section, much diversity of judicial opinion exists as to the true meaning of this section. Many courts have held that the assignee who acquires the mere legal title to a claim for the purpose of collection, without any consideration other than an agreement to proceed with diligence to endeavor to collect and pay the proceeds of the collection, either in whole or in part, to the assignor creates in the assignee the status of a real party in interest who may bring the action on the claim. We shall at a later point in this opinion review and discuss some of these decisions. Other courts consider such transfers as being merely simulated, and hold that, though where, as here, no consideration being paid and the assignor being entitled to a substantial part of the proceeds of the claim assigned, the assignment does not operate to make the assignee the real party in interest within the meaning of the above section of our Codes, as is illustrated by the following decisions: *Gaffney* v. *Tammany,* 72 Conn. 701, 46 Atl. 156; *Muller* v. *Witte,* 78

Conn. 495, 62 Atl. 756; *Olmstead* v. *Scutt*, 55 Conn. 125, 10 Atl. 519; *Waterman* v. *Merrow*, 94 Me. 237, 47 Atl. 157; *Coombs* v. *Harford*, 99 Me. 426, 59 Atl. 529; *Abrams* v. *Cureton*, 74 N. C. 523; *Martin & Garrett* v. *Mask*, 158 N. C. 436, 74 S. E. 343, 41 L. R. A. (n. s.) 641; *Brown* v. *Ginn, Trustee,* 66 Ohio St. 316, 64 N. E. 123; Cf. *People* v. *Securities Discount Corp.*, 361 Ill. 551, 198 N. E. 681; *State* v. *James Sanford Agency*, 167 Tenn. 339, 69 S. W. (2d) 895.

It will be noted, in giving consideration to section 9067, that certain exceptions are enumerated within the section itself, namely, executors and administrators, a trustee of an express trust, and persons authorized by statute. It would appear that if the legislature had intended that a real party in interest was one who held only the legal title of a claim, no reason can well be suggested for mentioning these exceptions. No one may dispute that a trustee of an express trust holds the legal title to the trust funds, the property of the trust; and, likewise, the executor and the administrator would ordinarily hold the legal title of a chose in action, the property of the estate. Thus it would appear to be clear, in the light of these exceptions, that it was the intention of the legislature in adopting this section that when it used the words "real party in interest," it meant exactly what it said.

Such is the view expressed by Mr. Kerr in his work on Pleading and Practice in Western States. At page 787 of this work it is written: "In other words, 'assignment' means just what it says, using that word in its legal and technical sense; it is a contract whereby the owner of the thing in action divests himself of all interest and right and title therein, and of all right to receive or derive any further or future benefit therefrom, and vests all the interest and right and title, including the right to the money on the payment or enforcement of the same, for a valuable consideration, or as a gift or donation. If the owner still retains an interest in the 'thing in action,' and has the right to receive the money arising from the enforcement thereof by an action at law or a suit in equity,

on execution or otherwise, the transaction is in no legal sense an 'assignment,' as that word is used in procedural Codes. A transfer, either with or without endorsement, without consideration, and merely for the purpose of having an action instituted and prosecuted in the name of another, and enforcing the thing in action by a judgment and execution, retaining the right to receive the proceeds of such judgment and execution, not being in any proper and legal sense an 'assignment,' does not make the party to whom the pretended transfer is made and in whose name the action is instituted the 'real party in interest' and entitled to maintain an action thereon under the Code provision; and to hold that such camouflage of a simulated transfer does confer that right is not only to do violence to the clear and explicit language of the Code, but is also, in many instances, a judicial violation of, and evasion of, that other provision of the Code requiring nonresident plaintiff and foreign corporations to give security for costs; accomplishes no useful purpose in judicature, but does enable the owners of 'things in action,' in some instances, to escape their legal obligations, and promotes the interests of collection agencies.''

This same author, after observing that a view at variance with that expressed by him exists in the decisions of the courts of many states, has this to say: '' * * * , but that does not change the facts in the case; the construction is unwarranted by the Code provisions themselves or by any common-law or statutory rule of construction; has too much of the air of 'special pleading,' and can be but regarded as 'judicial legislation,' and not an enforcement of either the letter or spirit of the statute.'' Finally, on page 791, the author declares: ''The real party in interest in a 'thing in action,' is the person who is to derive the substantial or monetary benefit therefrom. The camouflage of a 'simulated transfer' cannot make the transferee the real party in interest—with all due respect to the decisions which, under a forced construction, hold otherwise. It is simply a correct interpretation of plain Anglo-Saxon words.''

In 34 Yale Law Journal, page 273, an article on the subject of the real party in interest appears. Although the article takes a view somewhat opposite to that advanced by Mr. Kerr, nevertheless as one of the grounds for their view the authors advance the argument that in most Codes this section, as it exists in our Code, is divided into two sections, one providing merely that the action shall be brought in the name of the real party in interest, and the other containing the provisions of our section following the word "except." It is said that since the provisions are divided into different sections, they are of equal dignity, and that one does not thereby become the exception to the other. It is noteworthy that in this action such was the state of our statutory provisions prior to the adoption of the Codes of 1895. Section 570 of the Code of Civil Procedure of 1895 was in the same form as our present section. Prior to that time, however, we had this same matter contained in two sections. (See secs. 4 and 6, Title 2, Compiled Statutes of 1887.)

Counsel for the defendants have invited our attention to many cases holding that an assignment such as the one here under consideration would operate to make the defendant corporation, in actions prosecuted by it under these assignments, a real party in interest. Among these is the case of *Cohn* v. *Thompson*, 128 Cal. App. (Supp.) 783, 16 Pac. (2d) 364. That case, however, was based in part upon a statute expressly authorizing such assignments. The court in the course of its opinion cited many earlier California cases prior to the enactment of this statute, which announced a similar rule. The earliest decision there referred to is the case of *Grant* v. *Heverin*, 77 Cal. 263, 18 Pac. 647, 19 Pac. 493. The California court there based its decision entirely upon the statement found in section 132 of the then current edition of Pomeroy on Code Remedies & Remedial Rights, which is quoted in the opinion. The quotation, however, states that if the assignment "of any action is absolute in its terms so that by virtue thereof the entire apparent legal title vests in the

assignee any contemporaneous collateral agreement by which he is to receive a part of the proceeds and has to account to the assignors and other persons for the residue,  *  *  * such assignee is the real party in interest.'' Here resort is not necessary to a collateral agreement to ascertain the fact that the assignor is entitled to the proceeds and that he retains control over the chose in action, for it is apparent on the face of the written assignment. Some of the later California cases lay down the rule in entire accord with the contention of the defendants.

Counsel cite the case of *Mosher* v. *Bellas,* 33 Ariz. 147, 264 Pac. 468. Arizona, however, as a part of their section, which is a counterpart of our section 9067, provides: ''The assignee of any chose in action is a trustee of an express trust, within the meaning of this Section.'' (*Sroufe* v. *Soto Bros. & Co.,* 5 Ariz. 10, 43 Pac. 221.)

Again counsel cite the case of *Carson Pirie Scott & Co.* v. *Long,* (Iowa) 268 N. W. 518, 519, as announcing the rule for which they contend, and without question the case so holds; but we find that Iowa for many years has had a statute providing that an open account ''of sums of money due on contract may be assigned, and the assignee will have the right of action in his own name,'' etc. (*Knadler* v. *Sharp,* 36 Iowa, 232.) Thus it will be observed that the courts of Iowa and Arizona have express statutory authority for their conclusions, the like of which does not exist in this jurisdiction.

The courts of Kansas, after deciding otherwise, finally adopted a rule in accordance with the defendants' contention. (*Manley* v. *Park,* 68 Kan. 400, 75 Pac. 557, 66 L. R. A. 967, 1 Ann. Cas. 832.) The Kansas statute, although it is divided into two sections, is similar to our own. Likewise the court of South Dakota, in the case of *Citizens' Bank* v. *Corkings,* 9 S. D. 614, 70 N. W. 1059, 62 Am. St. Rep. 891, under a statute similar to the Kansas statute, adopted a like rule.

It is noteworthy, in passing, that so far as promissory notes which are negotiable in form are concerned, they are on a

different basis, as under section 9067, Revised Codes, a person who is authorized by statute may sue without joining with him the person for whose benefit the action is prosecuted. Section 8458, Id., provides that the holder of a negotiable instrument may sue thereon in his own name; and section 8402 defines a "holder" to mean the payee or indorsee of a bill or note, who is in possession of it or the bearer thereof.

We hold that the defendant corporation under these assignments, so far as accounts and claims other than negotiable promissory notes are concerned, is not the real party in interest and therefore not entitled to sue on such assigned claims, and that, when so suing, it was not representing itself, but its assignors.

Section 8944, Revised Codes, defines the practice of law as ▉ follows: "Any person who shall hold himself out, or advertise as an attorney or counselor-at-law, or who shall appear in any court of record or before a judicial body, referee, commissioner, or other officer appointed to determine any question of law or fact by a court, or who shall engage in the business and duties and perform such acts, matters, and things as are usually done or performed by an attorney-at-law in the practice of his profession for the purposes of this Act, shall be deemed practicing law."

Since the defendant corporation was only acting in a representative capacity when it prepared pleadings and filed them in the district court, which is something usually done and performed by attorneys at law in the practice of their profession, the corporation and its agent, Palmer Johnson, were practicing law. The same is true with reference to actions in the justice court, unless they were relieved by the provisions of section 8943, reading as follows: "If any person practice law in any court, except a justice's court or a police court, without having received a license as attorney and counselor, he is guilty of a contempt of court"; and also section 9629, which declares: "Parties in justice's court may appear and act in person or by attorney; and any person, except the constable

by whom the summons or jury process was served, may act as attorney."

It is suggested that the defendant corporation may practice law in a justice court under these sections, on the theory that the word "person" in section 9629, includes corporations. Section 16 of the Codes declares that the word "person" includes corporations wherever used in the Codes. A like provision occurs in section 10713. Section 8776 declares: "Whenever the meaning of a word or phrase is defined in any part of this code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears." Section 15 of the Code provides that "words and phrases used in the codes or other statutes of Montana are construed according to the context and the approved usage of the language."

If the suggestion of the defendant corporation is worthy of consideration, we find that section 8936, Revised Codes, providing who may be admitted as attorneys, includes any citizen or person resident of this state. It is everywhere held that a corporation can never be authorized to practice law itself, and neither can it employ attorneys to practice for another. (2 R. C. L. 946; *State* v. *James Sanford Agency*, 167 Tenn. 339, 69 S. W. (2d) 895; *Richmond Assn. of Credit Men* v. *Bar Assn.*, (Va.) 189 S. E. 153, decided January 14, 1937, and not yet reported [in State report] ; *People* v. *Securities Discount Corp.*, 279 Ill. App. 70, affirmed in 361 Ill. 551, 198 N. E. 681; *In re Opinion of Justices*, 289 Mass. 607, 194 N. E. 313; *In re Co-operative Law Co.*, 198 N. Y. 479, 92 N. E. 15, 32 L. R. A. (n. s.) 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879; *In re Otterness*, 181 Minn. 254, 232 N. W. 318, 73 A. L. R. 1319; *People* v. *Merchants' Protective Corp.*, 189 Cal. 531, 209 Pac. 363; *People* v. *Motorists Assn. of Illinois*, 354 Ill. 595, 188 N. E. 827; *People* v. *People's Stock Yards State Bank*, 344 Ill. 462, 176 N. E. 901; *State ex rel. Lundin* v. *Merchants' Protective Corp.*, 105 Wash. 12, 177 Pac. 694; *State* v. *Retail*

*Credit Men's Assn.,* 163 Tenn. 450, 43 S. W. (2d) 918; *Berk* v. *State,* 225 Ala. 324, 142 So. 832, 84 A. L. R. 740.)

Section 5903, Revised Codes, enumerates the purposes for which private corporations may be formed. It includes many purposes. The section closes with the parting injunction: ''No corporation must be formed for any other purpose than those mentioned in this section''; and nowhere in this section do we find any subject which even by inference or innuendo might include the practice of law. It is fundamental that a special statute controls a general one where both relate to the same subject. (*Durland* v. *Prickett,* 98 Mont. 399, 39 Pac. (2d) 652; *Langston* v. *Currie,* 95 Mont. 57, 26 Pac. (2d) 160; *State ex rel. Daly* v. *Dryburgh,* 62 Mont. 36, 203 Pac. 508.) Accordingly, the word "person" as used in section 9629 does not include a corporation.

Plaintiff contends that when the defendants sued to recover attorneys' fees on a promissory note they were guilty of the unlawful practice of law. Section 8958, Revised Codes, makes it unlawful for any court to allow attorneys' fees in an action when the party is represented by someone other than a duly licensed attorney. The defendant corporation is without justification in making such demand, and courts in allowing fees under such circumstances are subject to severe condemnation. The record discloses that attorneys' fees have been included in judgments where no attorney was employed in justice courts, but it is asserted that in no such case has the fee ever been collected. This practice is a direct violation of the statutes of this state and it amounts to an unlawful practice of law. The demanding of attorneys' fees is usually done by a licensed attorney in his practice, and therefore comes within the statutory definition of the practice of law.

Complaint is made of the defendants' joining both the husband and wife in all actions where a claim against either is involved. They have done so on the theory that the debt was due for the purchase of necessities of life, in which event such joinder may be proper. (Sec. 5790, Rev. Codes.) In

some cases it was shown that such joinder was made when the facts in nowise justified this practice. This course of conduct, when without the terms of the statute, should not be encouraged. It at least amounts to sharp practice.

Defendants prior to the commencement of this proceeding ▉ frequently addressed to the debtors a document designated as a "final notice." This instrument is on regular legal paper commonly used in court proceedings and bears the names of the parties, followed by the appropriate designation of plaintiff and defendant. On it appears the statement, "Original to the defendant, and duplicate to the clerk of the court." On the back of the instrument appears a notation, as follows: "Final notice filed April 27, 1935." These instruments are designed to simulate legal process and were sent out before any action was commenced in court. Documents of similar import have been condemned in the case of *State Bar of Oklahoma* v. *Retail Credit Assn.*, 170 Okl. 246, 37 Pac. (2d) 954, and we likewise concur in what was there said in condemnation of this practice.

The whole course of conduct as disclosed by the record in this case manifests an attempt on the part of the defendants unlawfully to practice law and to seek either to ignore or evade the statutes. Accordingly we find the defendants to be guilty of contempt. Let judgment be entered finding the defendants guilty of contempt and fining them in the amount of the costs of this proceeding.

ASSOCIATE JUSTICES STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, Concurring Specially:

I concur in the majority opinion and add the following observations:

This is an original proceeding to determine whether the defendants herein are guilty of contempt of court. The questions, in short, involved in this controversy are as to the authority, first, of a corporation to appear as an attorney in

a justice or other court of the state; and, second, as to whether such corporation, making collections as it has in the past, is authorized to so act in view of our provisions relating to the practice of law in the state of Montana; third, whether individuals, as such, not being admitted to practice law in the state, may conduct themselves as in the manner set forth.

Our section of the Revised Codes, 8944, presumes to define the practice of law in the following words: "Any person who shall hold himself out, or advertise as an attorney or counselor-at-law, or who shall appear in any court of record or before a judicial body, referee, commissioner, or other officer appointed to determine any question of law or fact by a court, or *who shall engage in the business and duties and perform such acts, matters, and things as are usually done or performed by an attorney-at-law in the practice of his profession for the purposes of this act,* shall be deemed practicing law."

It is the policy of the law that men acting in a professional capacity shall have more than usual knowledge of that particular profession, and, further, that in order to protect the public this unusual information or adaptability shall be evidenced to the public by a license to practice that particular profession. The more familiar vocations thus licensed are medicine, dentistry, accountants, instruction, etc. The primary purpose of the license is to protect the public. A secondary purpose is a protection to the persons practicing the particular profession, and to encourage them to better prepare for that service. While in this case the parties chiefly instrumental in bringing the suit are attorneys, no doubt chiefly for their own protection, the fact nevertheless remains that the chief purpose is as stated—the protection of the public in general, which fact we emphasize in this proceeding.

Certain professional requisites are specified in the law before an attorney may be admitted to practice. Certain prohibitions are stated in the law to prevent malpractice; and certain exceptions are made whereby persons not licensed to practice law may nevertheless appear in the justice court to

prosecute or defend actions therein. Such persons appearing in such justice proceedings are acting as attorneys as much as a licensed attorney acts as an attorney in the same proceeding. He is excused from establishing his ability in certain directions pertaining to the practice of law, but otherwise he is not excused from following the directions of law relating thereto. His lack of proficiency in the law practice is excused, but he is not excused from following the rules of ethics required of attorneys. He is acting as an attorney, though without an attorney's license. For instance, the law (sec. 10936, Rev. Codes) provides as follows: "Common barratry is the practice of exciting groundless judicial proceedings, and is punishable by imprisonment in the county jail not exceeding six months, and by fine not exceeding five hundred dollars." Section 10937 provides: "No person can be convicted of common barratry except upon proof that he has excited suits or proceedings at law in at least three instances, and with a corrupt and malicious intent to vex and annoy."

The defendants in this case admit that they have in many cases brought suit against the wife of a debtor, and herein acknowledge that she was not a proper party defendant. They have therefore confessed the violation of the above statutory provision against common barratry. They also admit that they often caused to be entered as a part of the judgment an attorney's fee when they knew no such fee was allowable therein. Such malpractice is condemned by law and by the ethics of the legal profession, and should not apply to attorneys alone but to every person acting as an attorney whether in a justice' or other court. Other branches of procedure of like character properly apply to individuals assuming to direct law procedure as well as lawyers. The individual who, according to the statute above, shall engage in the business and duties, and "perform such acts, matters, and things as are *usually done or performed* by an attorney-at-law in the practice of his profession * * * shall· be deemed practicing law." (Rev. Codes 1935, sec. 8944.)

The individuals or corporations engaged in appearing in justice courts as were the defendants in this case in collecting claims, were presuming to use the courts, if need be, to collect the claims in their hands for collection. They were permitted to go into the justice court and practice law without having a license to practice. Impliedly they were practicing law, as, under the express provision of the section quoted, they were performing the same duties as lawyers generally, and when so engaged would be necessarily practicing law. To excuse such persons from obeying the mandate of the statute or the unwritten rules which determine the character of the practice of lawyers acting in the same capacity, would be to impose an unjustifiable burden upon lawyers not imposed on individuals engaged in the same line of work. As said before, the fact that these corporations or unlicensed individuals are authorized to practice before the justice court, gives them no license to violate the well-established principles of ethics that govern lawyers.

The practice admitted by the defendants in this case in many instances clearly demonstrates the extent to which these collection organizations and unlicensed attorneys go and their disregard of the rights of their fellow-citizens. For this reason we must emphatically say they are engaged in the practice of law and must be held to all the rules of ethics pertaining to the profession of law.

The defendants in part attempt to defend themselves by claiming to be the assignees of the claims held in their hands for collection. Any person having a valid claim may bring suit in any court in his name and act as attorney for himself regardless of whether he has an attorney's license or not. Even while acting as his own attorney he is bound by the same rules of ethics as if he employed a regular attorney. The protection of the public so demands. Certain forms used by the defendant company pretending to be an assignment of a claim appear in the record. A careful reading discloses that it is a mere cloak to screen the ulterior purpose of the assignee

to authorize it to appear in court without an attorney. It is a subterfuge calculated to deceive the court and to authorize an unauthorized person to appear for the corporation in a court that requires an authorized attorney to make such appearance, except in the one instance of justice courts. To permit this manner of doing business by these corporations would be to completely set aside the law requiring licensed attorneys to appear in courts in the prosecution of suits. The attempted subterfuge should condemn the practice in the loudest terms.

But further than this, corporations are not authorized to appear as attorneys at any place where the services of an attorney are required. Section 5903, Revised Codes, designates the purposes for which corporations may be organized. Nowhere does it authorize corporations to be organized for the purpose of practicing law, and, in passing, we may also say that nowhere does the section authorize the organization of a corporation for the purpose of buying claims. The law (section 8980) makes it a penal offense for attorneys to purchase claims with the intent to bring suit thereon, and the corporation in this case has clearly brought itself within the purview of that section and pleaded guilty to the purchase of the claims and of attempting to practice as an attorney. If a lawyer may not purchase claims with a view to bringing suits thereon, a corporation is bound by the same statute if in fact it has any authority therein whatever. We therefore hold that the practice of corporations or others, laymen as well as lawyers, of purchasing claims as set out in the testimony in this case is unlawful and subject to punishment under section 8980.

It has been suggested that in some proceedings in order to determine the right of a corporation to take an assignment of these claims, a writ of *quo warranto* is necessary. I differ emphatically with this view. Here the corporation is defending a supposed right as an artificial person. It is by the law a nonentity and is therefore without power to appear or defend. The right to appear as a corporation must be made to appear by the pleadings and proof. Here this was impossible.

It is not necessary for the state to show that is does *not* have a right. The proof must all come from the other side. It is a necessary affirmative allegation. Therefore these corporations have no right to hold property of this character or to bring suits in the corporate name in connection with any of these alleged assigned claims. The practice of the many collection agencies in this state has become so obnoxious to the public that we are happy to clarify the situation and make it clearly possible to put the courts and the profession of law on a foundation consistent with justice and fair play. In view of the apparent misconception of the privileges of these collection agencies, the malpractice heretofore existing will be overlooked with the distinct understanding that any future violations will be severely punished.

MR. JUSTICE ANGSTMAN, Dissenting:

I am not able to agree with what is said in the majority opinion with reference to the effect of the assignments. In my opinion, the assignments in question gave defendant corporation the right to maintain actions on the claims in its own name. I think in order to arrive at the legislative intent in the enactment of section 9067, it is important to give consideration to the history of that section.

It first came into our Codes in 1864, under the Bannack Statutes, and then provided: "Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in this Act: *but in suits brought by the assignee of a chose in action, account, or unliquidated demand, not assigned in writing, the assignor shall be made a party defendant, to answer as to his interest in the subject matter of the action.*" (Sec. 4, p. 43, Bannack Statutes.) In 1867 it was amended so as to eliminate that provision which is italicized. (Statutes of 1867, p. 136.) Thus it will be seen that when first enacted, the assignee could sue on a written assignment without joining the assignor. But when the assignment was oral, the statute required that the assignor be joined.

By amending the statute in 1867, the requirement that the assignor under an oral agreement must be joined, was eliminated, thus evidencing a clear intent on the part of the legislature that in all assignments, written or oral, the assignor need not be a party to the action, but that it was properly maintainable by the assignee in his own name.

The legislature again, in 1895, further amended the statute as stated in the majority opinion; but before doing so Mr. Pomeroy, in his work on Code Remedies, third edition, section 132, when speaking with reference to whether an assignee for collection was the real party in interest, had said: ''Analogous to the subject discussed in the preceding paragraph is the question whether an assignee, to whom a thing in action has been transferred by an assignment which is absolute in its terms, so as to vest in him the entire legal title, but which, by means of a contemporaneous and collateral agreement, is, in fact, rendered conditional or partial, is the real party in interest. It is now settled by a great preponderance of authority, although there is some conflict, that if the assignment, whether written or verbal, of anything in action is absolute in its terms, so that by virtue thereof the entire apparent legal title vests in the assignee, any contemporaneous collateral agreement by virtue of which he is to receive a part only of the proceeds, 'and is to account to the assignor or other person for the residue, or even is to thus account for the whole proceeds, or by virtue of which the absolute transfer is made conditional upon the fact of recovery, or by which his title is in any other similar manner partial or conditional,' does not render him any the less the real party in interest; he is entitled to sue in his own name, whatever collateral arrangements have been made between him and the assignor respecting the proceeds. The debtor is completely protected by the assignment, and cannot be exposed to a second action brought by any of the parties, either the assignor or other, to whom the assignee is bound to account. This is the settled doctrine in most of the states. Notwithstanding the general unanimity of the courts

in sustaining this doctrine, there are still some indications of a different opinion, although it can hardly be said that this difference has been embodied in an adjudication as the *ratio decidendi.*"

By the amendment of 1895 our statute was made to read exactly as the New York statute, which had prior to 1895 been construed as authorizing an assignee for collection to sue in his own name. (*Allen* v. *Brown*, 44 N. Y. 228; *Cummings* v. *Morris*, 25 N. Y. 625.) Likewise prior to 1895, California, with the same statute, had construed it in the same manner. (*McPherson* v. *Weston*, 64 Cal. 275, 30 Pac. 842.) When interpreting what are now sections 9067 and 9068, Revised Codes of 1935, this court has always placed great reliance upon the New York and California decisions, as will appear in the cases of *Stadler* v. *First Nat. Bank*, 22 Mont. 190, 56 Pac. 111, 74 Am. St. Rep. 582, and *Cornish* v. *Woolverton*, 32 Mont. 456, 81 Pac. 4, 108 Am. St. Rep. 598; and the rule is of long standing that when we borrow a statute from another state which prior to its enactment here had been construed by the courts of the state from which we adopted it, the presumption is that our legislature also adopted that construction. (*Esterly* v. *Broadway Garage Co.*, 87 Mont. 64, 285 Pac. 172; *St. George* v. *Boucher*, 88 Mont. 173, 293 Pac. 313.)

The courts throughout the country have construed statutes either identical or nearly the same as section 9067, supra, as authorizing the assignee for collection to sue in his own name. (*Manley* v. *Park*, 68 Kan. 400, 75 Pac. 557, 1 Ann. Cas. 832, 66 A. L. R. 967; *Coffman* v. *Saline Valley R. Co.*, 183 Mo. App. 622, 167 S. W. 1053; *Morrison* v. *Veach*, 190 Cal. 507, 213 Pac. 945; *James* v. *Lederer-Strauss & Co.*, 32 Wyo. 377, 233 Pac. 137; *McGillivray* v. *Columbia Salmon Co.*, 104 Wash. 623, 177 Pac. 660; *Dyer* v. *Title Guaranty & Surety Co.*, 106 Wash. 186, 179 Pac. 834; *Falconio* v. *Larsen*, 31 Or. 137, 48 Pac. 703, 37 L. R. A. 254; *Citizens' Bank* v. *Corkings*, 9 S. D. 614, 70 N. W. 1059, 62 Am. St. Rep. 891; *Mosher* v. *Bellas*, 33 Ariz. 147, 264 Pac. 468; *Collins* v. *Heckart*, 127 Or. 34, 270 Pac.

907; *Ingham* v. *Weed,* 5 Cal. Unrep. Cas. 645, 48 Pac. 318; *Cohn* v. *Thompson,* 128 Cal. App. (Supp.) 783, 16 Pac. (2d) 364; *Moss* v. *Taylor,* 73 Utah, 277, 273 Pac. 515; *Keon* v. *Saxton & Co.,* 227 App. Div. 733, 236 N. Y. Supp. 503; *Elam* v. *Arzaga,* 122 Cal. App. 742, 10 Pac. (2d) 805; *Hammell* v. *Superior Court,* 217 Cal. 5, 17 Pac. (2d) 101; *Perkes* v. *Utah Idaho Milk Co.,* 85 Utah, 217, 39 Pac. (2d) 308; *Bechtel* v. *Baglieto,* 13 Cal. App. (2d) 495, 57 Pac. (2d) 192; *Hibernia Securities Co.* v. *United Mfg. Co.,* (Or.) 59 Pac. (2d) 384; *Carson Pirie Scott & Co.* v. *Long,* (Iowa) 268 N. W. 518; note, 64 L. R. A. 582.)

In 4 Am. Jur. 328, the rule is stated as follows: "An assignee for collection is generally considered to be the real party in interest under these statutes, though he is to account to the assignor for the proceeds of the action." To the same effect is 2 R. C. L. 640, and 5 C. J. 995.

Some of the foregoing cases hold that the assignee for collection is trustee of an express trust within the meaning of the statute, and others that he is the real party in interest. Thus for more than forty years our statute has remained unchanged with practically all courts in the country construing it as authorizing the assignee for collection to maintain action in his own name. Moreover, it is a matter of common knowledge that during this period of time courts and litigants throughout the state have recognized the assignee for collection as the real party in interest. It has been taken for granted that such an assignee may sue in his own name, and no one has ever presented the question to this court in a direct proceeding challenging his right to sue.

Were it not for the historical background of section 9067, there might be some merit in what Mr. Kerr has stated, which the majority of this court now place reliance on. Is it not strange that if it did not want the assignee for collection to have the right to sue, the legislature has taken no steps to change the law?

My associates seem to lay stress upon the fact that here there was no collateral agreement, but that the whole agreement appears on the face of the assignment. I can see no logical reason for any different rule on this account. Certainly, defendant corporation is not to be penalized because it dealt aboveboard and placed the entire agreement relating to the terms of the assignment in one contract rather than having two separate contracts.

I agree, of course, that if the assignment does not make the assignee the real party in interest, then the corporation is simply furnishing legal services to another, which it has no right to do. But it is my view that the assignment operates to make the assignee the real party in interest and, in consequence, it is appearing for itself in maintaining actions, and not for another. The cases relied upon in the majority opinion do not militate against this view. The case of *Abrams* v. *Cureton*, 74 N. C. 523, was decided upon the theory that if the assignee be permitted to sue in his own name, the defendant would be prohibited from asserting defenses against the assignor, except by resorting to another action. That is not true under our statute (sec. 9068), for it expressly saves those rights to the defendant. That section provides: "In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off or other defense existing at the time of, or before, notice of the assignment." Thus the reasoning of that case does not apply in this state.

The case of *Martin & Garrett* v. *Mask*, 158 N. C. 436, 74 S. E. 343, 41 L. R. A. (n. s.) 641, was one where an agent was suing on a debt due to his principal. Obviously he was not the real party in interest. The case states, by way of *dictum* only, that an assignee of a claim for collection is not the real party in interest.

The case of *Brown* v. *Ginn*, 66 Ohio St. 316, 64 N. E. 123, contains language tending to support the view stated in the majority opinion, but there the assignment was made to an attorney and the court held that it was champertous and for

that reason void. It cannot be determined on which ground the court based its opinion.

In the case of *People* v. *Securities Discount Corp.*, 361 Ill. 551, 198 N. E. 681, relied upon in the majority opinion, no mention was made of any statute such as our section 9067. The same is true of *State* v. *James Sanford Agency*, 167 Tenn. 339, 69 S. W. (2d) 895.

The cases of *Coombs* v. *Harford*, 99 Me. 426, 59 Atl. 529, and *Waterman* v. *Merrow*, 94 Me. 237, 47 Atl. 157, had to do with assignments without any consideration and for the sole purpose of bringing suit. Here the defendant corporation actually sues upon only a small percentage of the claims assigned to it, but endeavors always to effect collection without suit. It devotes time and money in an effort to collect without suit; hence the assignments here are for a consideration, viz., defendants promise to endeavor to collect. (Sec. 7503, Rev. Codes.) Likewise the cases of *Gaffney* v. *Tammany*, 72 Conn. 701, 46 Atl. 156, and *Muller* v. *Witte*, 78 Conn. 495, 62 Atl. 756, were cases where the assignments were without consideration and for the sole purpose of suit. The case of *Olmstead* v. *Scutt*, 55 Conn. 125, 10 Atl. 519, was also a case where an assignment was made without consideration that it might be used as a set-off in an action pending by another against the assignee.

The Maine and Connecticut cases are clearly distinguishable from the case here because in all of those cases the assignee had no interest in the claim whatever, but was to account for the entire proceeds to the assignor and gave absolutely no consideration for the assignments. The assignments were merely a subterfuge and for the purpose of enabling the assignee to sue for the sole benefit of the assignor.

Entertaining the view that I do concerning the effect of the assignments, it then becomes pertinent to inquire whether the activities of defendants in the justice courts are legitimate. Section 8943, Revised Codes, provides: "If any person practice law in any court, except a justice's court or a police court,

without having received a license as attorney and counselor, he is guilty of a contempt of court." Section 9629 provides: "Parties in justice's court may appear and act in person or by attorney; and any person, except the constable by whom the summons or jury process was served, may act as attorney." The word "parties," as used in the last-cited section, is broad enough to include corporations.

Therefore the defendant corporation under this statute has the right to appear in justice courts, either in person or by attorney. A corporation cannot act in person, but may appear by attorney. Anyone may act as attorney for it, except the constable by whom the summons or jury process was served.

The state of Colorado has statutes similar in purpose to our sections 8943 and 9629. They were before the court in *United Securities Corp.* v. *Pantex Pressing Mach., Inc.,* 98 Colo. 79, 53 Pac. (2d) 653, 656. In that case, as here, a collecting agent acting for the plaintiff corporation made an affidavit of attachment, filed an undertaking on attachment, and procured a writ of attachment. The contention was there made that the corporation and its agent were engaged in the unlawful practice of law. The court in holding against that contention said: "The claims and causes there [in justices' courts] litigated are of minor importance. The court is often referred to as the 'poor men's court,' and the causes frequently do not justify the expense of an attorney. With few exceptions, the justices of the peace who preside at the trials are men with no legal training whatsoever, nor are they required by law to have such training. No record is made of the proceedings in justice courts, *nor are such proceedings ever reviewed by any court to which the cause may be appealed.* Whether a cause is well presented or well defended or poorly presented or poorly defended in the justice court can never aid or hamper another court in the exercise of its jurisdiction over the subject-matter of the trial. On appeal to the county court, a court of record, the trial must be *de novo* (sec. 6179, C. L. 1921; *McCreary* v.

*Brady,* 26 Colo. App. 297, 143 Pac. 829; *Slaughter* v. *Strouse,* 20 Colo. App. 484, 487, 79 Pac. 972), and under both the statutes of the state and the holding of this court, supra, a corporation can appear in a court of record only by an attorney at law. We hold, therefore, that the plaintiff corporation, under the statute, was within its legal rights in appearing in the justice court by its agent, not licensed to practice law, and that having appeared by attorney in the county court it was the duty of the latter to hear the cause *de novo.''* To the same effect is *Rehm* v. *Cumberland Coal Co. of Baltimore City,* 169 Md. 365, 181 Atl. 724.

But it is here asserted that this court has inherent power to define the practice of law and to hold that defendants here are engaged in the practice of law in the justice courts notwithstanding sections 8943 and 9629. While this court has inherent power to determine what constitutes the practice of law, it is bound to respect legislative enactments such as are contained in sections 8943 and 9629. The supreme court of California in the case of *Eagle Indemnity Co.* v. *Industrial Acc. Com.,* 217 Cal. 244, 18 Pac. (2d) 341, 343, had a similar question before it. In that case there were involved statutes authorizing parties to appear before the Industrial Accident Board in person or by attorney or other agent, and allowing the commission to fix a reasonable attorney's fee for legal services pertaining to any claim. In that case an award for attorneys' fees was made to one not a licensed attorney. The court held that the agent who was awarded this fee was not unlawfully practicing law. The court referred to the statutes, identical with ours, which make an exception in the case of proceedings in a justice court. In discussing the question of the policy of such a provision, the court said: ''On the one hand it is urged that the order should be affirmed on the ground that numerous claimants for compensation are indigent and their claims are of such a character and the compensation allowed by the commission is so small as not to justify the engagement or service of a member of the bar, and that with-

out the right to have a lay representative the claimant would ofttimes be unrepresented. On the other hand, it is urged that to allow the order to stand would vitally affect the business of lawyers admitted to practice in the state, and would result in inexperienced and inexpert advice and assistance to a deserving claimant to the latter's detriment; and that the practice of allowing lay representation before boards exercising judicial functions should not be extended. Whatever view may be urged as to the policy of the law in such matters, the legislature has declared the policy, and we do not feel warranted in this instance in setting it aside. If it be desirable from a legislative standpoint to prohibit lay representation before the Industrial Accident Commission, the Act could be amended to accomplish that result.''

So far as the proceedings in the justice court are concerned, the assignment giving the corporation the right to sue in its own name, the acts of defendants do not constitute unlawful practice of law.

Moreover, if, as the majority hold, the corporation in bringing the actions under the assignments in question does not appear as the real party in interest, but acts for the creditor; even then, I think, it may maintain the actions in justice courts without being guilty of unlawfully practicing law. The objection that it is not the real party in interest should be otherwise raised than by this circuitous and untenable method. I concede that a corporation cannot practice law. The corporation, however, does not and cannot appear in any action in person. It always appears through an agent. Defendant Johnson is usually the agent who appears for it. Obviously, under section 9629, Johnson could appear for the creditor. If in legal contemplation it must be held that under these assignments defendants do in fact represent the creditors, still, I think, so far as the proceedings in the justice court are concerned, defendant Johnson, or any other agent, may appear as attorney in such actions, and the corporation may lend its

name as party plaintiff, without any of them being guilty of the unlawful practice of law.

Likewise defendants' activities in the district court are not open to criticism if the assignment has the effect which I think it has, because there the corporation appears through a duly licensed attorney.

One other point must be considered in connection with these assignments. Section 8980, Revised Codes, provides: "An attorney and counselor must not, directly or indirectly, buy, or be in any manner interested in buying, a bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing an action thereon." And section 8983 provides: "The last four sections apply to a person prosecuting an action in person, who does an act which an attorney and counselor is therein forbidden to do." It is here contended that by these statutes defendant credit corporation is precluded from taking these assignments. If the requisite intent may be established (in this connection compare *Moses* v. *McDivitt*, 88 N. Y. 62, *Starke* v. *Wannemacher*, 32 N. D. 617, 156 N. W. 494, 4 A. L. R. 167, *Bulkeley* v. *Bank of California*, 68 Cal. 80, 8 Pac. 643, *Tuller* v. *Arnold*, 98 Cal. 522, 33 Pac. 445, and *Crawford* v. *Engler*, 131 Cal. App. 374, 21 Pac. (2d) 460), then that would be a defense to the action brought by the assignee (*Strever* v. *Sinclier*, 66 Mont. 258, 213 Pac. 253; but it would not be a reason for holding that the assignee is practicing law, and hence in contempt of this court. The mere fact that an action was commenced does not prove the requisite intent. (*Moses* v. *McDivitt*, supra; *Starke* v. *Wannemacher*, supra.) If this were so, a thing in action could never be assigned, because a "thing in action is a right to recover money or other personal property by a judicial proceeding" (sec. 6804, Rev. Codes); and the assignment of a thing in action is clearly recognized by section 9068, Id.

Are defendants guilty of contempt of court because they secure judgment for attorneys' fees in justice courts when no

attorney is employed? Section 8958 prohibits the court from allowing attorneys' fees in such a situation. Defendant corporation ought not to make a demand for attorneys' fees when it prosecutes an action in the justice court without a duly licensed attorney appearing for it. Courts should not allow such fees under such circumstances. The real wrong committed in such a case is that committed by the court. In the district court the corporation has the right to such fees because there it always appears through a duly licensed attorney. The record discloses that, although attorneys' fees have been included in judgments in justice courts where no attorney was employed, that part of the judgment has been waived, and no fee in fact collected. Defendants gave as an excuse for demanding attorneys' fees in the complaint the fact that, if the case is contested, an attorney would be employed in the case. This may be a sufficient excuse for making the demand in the complaint, but it furnishes no excuse for permitting it to be included in the judgment. Even though the fee is never in fact collected, it furnishes to the judgment creditor an advantage in effecting a more favorable corpromise. The practice should be discontinued.

I think, however, that since the statute itself attempts to regulate the conduct of the court, rather than the parties litigant, and that, since this is the first time it has been brought to the attention of the court for judicial pronouncement as to its effect, we ought not to visit upon defendants the penalty of contempt on this account, but simply indicate our purpose to do so in the future if the practice be persisted in. As to the matter of sending out the final notices, I think since that practice has been discontinued, we should not impose any penalty in this case on that account.

As I read the majority opinion, its effect is to put all collecting agencies in Montana out of business. That may or may not be a good thing. Viewing the question from the standpoint of the debtor who is forced to pay his debts, it will probably not be questioned seriously that he finds the pitiless prac-

tice of some of the collecting agencies a poor substitute for the painless process of extracting money employed by the licensed attorney. But the debtor is not the one complaining here. He perhaps has realized that the question is one of policy for the legislature. He may have found that while he is debtor in one case, he may appear as creditor in another, and that there is advantage in having a poor man's court where litigants can appear without licensed attorneys, and in having collecting agents to whom accounts may be assigned for collection. At any rate, I think the whole question is one of policy for the legislature.

The legislature in 1901 passed what is now section 4863, which provides in part: "No justice of the peace shall practice law, * * * nor shall they take any claim or bill for collection, nor act as a collection agent in any sense whatever." If the legislature desired to place that same restriction on collecting agencies it doubtless would have done so. I think plaintiff's remedy to force collecting agencies to cease operating is to apply to the legislature and not to this court.

I think the judgment should be in favor of defendants.

Rehearing denied March 30, 1937.